Zoning Hearing Board of Willistown Township and the Township of Willistown, Appellants *v.* Lenox Homes, Inc., Appellee.

Argued October 8, 1980, before Judges CRAIG, MAC-PHAIL and WILLIAMS, JR., sitting as a panel of three. Reargued November 17, 1981, before President Judge

CRUMLISH, JR. and Judges MENCER, ROGERS, BLATT, WILLIAMS, JR., CRAIG and MACPHAIL.

*Robert J. Shenkin, MacElree, Harvey, Gallagher & Kean, Ltd.,* for appellants.

*Benjamin C. Zuckerman,* with him *Mark C. Schultz, Spencer, Sherr, Moses and Zuckerman, P.C.,* for appellees.

OPINION BY JUDGE CRAIG, January 11, 1982:

This zoning appeal seeks reversal of an order of the Common Pleas Court of Chester County directing the issuance of two building permits to the appellee landowner, Lenox Homes, Inc., allowing the erection of a dwelling on each of two lots in a 23-lot plan previously given subdivision approval by Willistown Township.

Although the township issued building permits for dwellings on the other 21 lots of the plan, it had refused permits for the two lots in question under Section 1413 of the township's zoning ordinance, providing:

Where a lot abuts a stream, lake or similar body of water, no dwelling or appurtenance thereto shall be constructed within one hundred

(100) feet of the high water mark of such body of water; and no dwelling or other building or structure shall be constructed in an area known to be subject to flooding.

The two lots abut a creek having a width of two or three feet and a normal depth of about two feet or less, and the building sites of those lots are within 100 feet of that creek.

After an earlier denial of the landowner's variance application for those two lots had been affirmed by the common pleas court, the landowner filed with the Willistown Township Zoning Hearing Board a challenge to the general validity of Section 1413.

The common pleas court, without taking additional evidence, concluded that the ordinance was "confiscatory" as to the two lots, without explicitly addressing the board's decision with respect to the general validity issue.

Where, as here, the court below has taken no additional evidence, our scope of review is limited to determining whether the board abused its discretion or committed an error of law. *Harper v. Ridley Township Zoning Hearing Board*, 21 Pa. Commonwealth Ct. 93, 343 A.2d 381 (1975).

We have therefore examined the board's decision in detail, noting particularly the board's findings of fact. One of those findings, the sixth, embodies the board's distillation, from the evidence presented, of the factors to be considered in regulating construction relative to streams or other bodies of water. In view of that finding, we perceive the question in this case to be:

Where the Willistown Township Zoning Hearing Board has adopted a definitive finding that:

6. Existence of alluvial soil, height, and distance are all factors to be considered in determining proper sites for construction on lots

abutting streams or other bodies of water (N.T. 35, 39-40, 42) [,]
is the Willistown Zoning Ordinance's total prohibition of all structures anywhere within one hundred feet of the "high water mark" of any stream or body of water —without reference to soil type, elevation of the land, size or nature of the stream or body of water, or any other factor other than the stated distance—generally invalid as an unreasonable means of achieving the police power purposes of zoning?

Although the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10603(3) empowers municipalities to regulate, by zoning ordinance, "open spaces and distances to be left unoccupied by uses and structures," there is no question but that such specific zoning devices must be employed in form and content reasonably related to the protection of the public health, safety, morals or general welfare. *Eller v. Board of Adjustment,* 414 Pa. 1, 198 A.2d 863 (1964).

### The Procedural Situation

To identify the procedural framework of this case, we must again note the increasingly familiar distinction, in Pennsylvania zoning law, between (1) general substantive validity challenges and (2) validity variances.

Every general substantive validity challenge to a zoning ordinance provision must be pursued, procedurally, under MPC §1004, 53 P.S. §11004, which covers every substantive "challenge [to] the validity of an ordinance or map or any provision thereof which prohibits or restricts the uses or development of land" in which the challenger has an interest. Landowners have a two-way option of presenting such challenges either to the zoning hearing board, MPC §1004(1)(a), or by curative amendment to the municipality governing

body, MPC §1004(1)(b). (The zoning hearing board route for general challenge has sometimes been overlooked in discussions focusing upon the curative amendment procedure, despite the obvious utility of proceeding before the zoning hearing board when validity challenges are to be presented alternatively with other issues.)

Moreover, the essential hallmark of a general validity challenge is the submission of a written statement, to the zoning hearing board or governing body, of the grounds for the challenge, MPC §1004(2)(a), together with plans or other descriptions of the development proposed, MPC §1004(2)(c). *Union Run Corp. v. Lower Paxton Township Board of Supervisors,* 53 Pa. Commonwealth Ct. 89, 416 A.2d 1157 (1980).

In contrast, the exclusive procedural route for a validity variance is to the zoning hearing board, in manner similar to other variances. *Robin Corp. v. Board of Supervisors of Lower Paxton Township,* 17 Pa. Commonwealth Ct. 386, 332 A.2d 841 (1975).

The concept of a "general substantive validity challenge" refers to those situations where a zoning ordinance may be (1) invalid on its face ("per se unconstitutional", *Cutler v. Newtown Township Zoning Hearing Board,* 27 Pa. Commonwealth Ct. 430, 435, 367 A.2d 772, 776 [1976]) as where a zoning ordinance might, for example, prohibit all non-Christian churches, or (2) the zoning ordinance may be generally invalid, not on its face, but within the factual context of the relevant aspects of the region or municipality, as where a zoning ordinance is exclusionary, *e.g., Surrick v. Zoning Hearing Board of Upper Providence Township,* 476 Pa. 182, 382 A.2d 105 (1978), or where a 50-foot front yard requirement is found to be invalid within a rural neighborhood, *e.g., Schmalz v. Buckingham Township Board of Adjustment,* 389 Pa. 295, 132 A.2d 233 (1957).

As to the nature of the validity variance, the key is the actuality of confiscation of the applicant's land, *i.e.*, unnecessary hardship, which results from applying a zoning regulation, perhaps otherwise valid, to the *unique circumstances* of that land, as exemplified by the peculiar topography of the land in both *Robin, supra,* and *McCandless Township v. Beho Development Corp.*, 16 Pa. Commonwealth Ct. 448, 332 A.2d 848 (1975).

Here, aside from some of the terms used by the court below in its opinion, this case has been a general validity challenge from the outset. The landowner's application to the zoning hearing board requested "invalidation of Ordinance" on the basis that "[t]he Ordinance in question is invalid. . . ." The landowner's appeal to court claimed the ordinance to be "invalid," and alleged that it "does not serve the public health, safety or welfare," although it also averred that the ordinance "is confiscatory in its effect." Most importantly, the landowner presented no evidence of any unique topography or any other unique circumstances of the land. Hence, unsurprisingly, neither the board nor the court has made any mention of such circumstances. Notably, the court below identified no distinctive aspect of the land in concluding that the ordinance was "confiscatory as to lots No. 1 and 18". Indeed, the landowner sought primarily to show that the land did *not* possess any specific difficulty, such as being subject to flooding. The attack was on the basis that the ordinance overbroadly prohibited construction, apart from any special circumstances of the location.

Thus, on this record no validity variance could be involved because, aside from the fact that none appears to have been sought, there is no distinctive aspect of the land which results in confiscation of use because of a mismatch between the ordinance and the

land. Moreover, the township board, having made findings of fact and conclusions of law, clearly confined itself to the question of general validity.

Hence, this case is not a validity variance case. Therefore, we cannot decide it on the basis of variance criteria, such as the township's claim that the hardship was self-inflicted in that the landowner, in its subdivision plan, determined the size and design of the affected lots. Aside from the fact that the township itself approved the subdivision plan, it is not the lot design or size which prevents all construction within the 100-foot zone; *the prohibition of all development within that zone* is the ordinance impact which has been alleged to be unreasonable.

## The Merits of the Validity Issue

Therefore, we turn to the merits of the substantive validity of this ordinance requirement, according to the principles summarized in *National Land and Investment Company v. Easttown Township Board of Adjustment*, 419 Pa. 504, 522, 215 A.2d 597, 607 (1965) as follows:

> The oft repeated, although ill defined, limitation upon the exercise of the zoning power requires that zoning ordinances be enacted for the health, safety, morals or general welfare of the community. See Cleaver v. Bd. of Adjustment, 414 Pa. 367, 200 A.2d 408 (1964). Such ordinances must bear a substantial relationship to those police power purposes. Glorioso Appeal, 413 Pa. 194, 196 A.2d 668 (1964); Sylvester v. Pittsburgh Zoning Bd. of Adjustment, 398 Pa. 216, 157 A.2d 174 (1959). Regulations adopted pursuant to that power must not be unreasonable, arbitrary or confiscatory. Eller v. Bd. of Adjustment, 414 Pa. 1, 198 A.2d 863 (1964).

We begin with full recognition of the presumption that a municipal ordinance requirement provides a valid means to a proper end, *Klem v. Zoning Hearing Board of Jackson Township*, 35 Pa. Commonwealth Ct. 560, 387 A.2d 667 (1978). However, the record offers, as the only possible police power purposes toward which the requirement is directed, the aims of (1) prevention of the consequences which ensue from floods, and (2) prevention of siltation of streams or bodies of water.

This ordinance section, by its very nature, does not amount to flood plain zoning in the sense contemplated by the authorization contained in MPC §605(2), 53 P.S. §10605(2), which permits classifications (or additional classifications within a zoning district) to be made for the prohibition of structures at or near flood plain areas. Because the only tie between the present ordinance and any flood sources is the flat 100-foot provision as to distance from streams, the ordinance section simply contains no expression relating its coverage to flood plains as such. *Cf. Kraiser v. Zoning Hearing Board of Horsham Township*, 45 Pa. Commonwealth Ct. 277, 406 A.2d 577 (1979) involving an ordinance which created a "Flood Plain Conservation District" embracing land actually subject to inundation. *See also* the Flood Plain Management Act, Act of October 4, 1978, P.L. 851, 32 P.S. §679.101 *et seq.* for an illustrative statutory approach based upon the identification of actual flood plains, adopted after the enactment of the regulation in question here.

Here the board made no finding that the land was within any flood plain; the evidence in the record confirms that it was not. The board's findings as to the necessary criteria "to be considered" as to construction near streams—alluvial soil, height, and distance—provides a solid basis for concluding that the goal of flood prevention does not constitute the police power

justification here because the regulation stands independent of the presence of alluvial or water-borne soil (*i.e.*, from previous inundation) and without any link to a flood plain elevation.

The second possible police power purpose is expressed by Finding 7 of the board, as follows:

7. Construction near a stream or on property abutting a stream has effects on the stream, probably the worst of which is siltation, which is a filling up of the stream, which from the biological standpoint causes changes in the organisms in the stream (N.T. 62).

Thus the key question is whether the flat prohibition of all structures within 100 feet of the high water mark of streams is an unreasonable means of guarding against siltation of the stream.

Still mindful of the presumption in favor of validity, we are drawn again to the board's Finding 6, holding that, not just distance, but also elevation and the presence of alluvial soil are factors to be considered in governing construction near streams or bodies of water. The board finding is impossible to dispute. Whether soil disturbance at a construction site will affect a nearby stream certainly depends upon the relative elevation of the two, and the presence or absence of alluvial soil, borne onto land by water, is plainly pertinent to whether construction might cause the soil to be recarried to the stream.

Viewed in the light of Finding 6, this regulation is a broadside rather than one directed at a police power goal. Under this section, all land, at whatever elevation in relation to the elevation of the banks of the stream or lake, is rendered unbuildable in a 100-foot swath. All land within that swath, even if it has never possessed any relationship to a deposit of alluvial soil, is barred from development. Most significantly, the prohibition extends, not only to all buildings, but to all

structures, thus necessarily precluding even the installation of structures to prevent siltation.

Moreover, the absence of any definition of "stream" or body of water, as to size or nature, means that the withdrawal of the 100-foot strips from development is, by its terms, applicable regardless of the smallness of the flow, as illustrated by the fact that the particular stream in this case has a maximum depth of two feet and width of three feet.

As the Pennsylvania Supreme Court said with respect to the use of overbroad setbacks as special regulations guarding against possible nuisance from mushroom culture, "let those special regulations be enacted on a reasonable basis rather than as a blanket prohibition." *Eller, supra,* 414 Pa. at 8, 198 A.2d at 864. Our own decision on mushroom plant setbacks, *Fazio v. Zoning Hearing Board of Marlborough Township,* 32 Pa. Commonwealth Ct. 243, 378 A.2d 1299 (1977), upheld them only in view of a record devoid of evidence against them and without board findings such as those which are pivotal here.

We also note that there is no basis whatsoever in the record or in the board's findings to justify the hypothetical assertion, in the board's discussion, that there is a "great likelihood that there are many more" justifications for the existence of the challenged section.

The landowner's evidence and the board's own finding show that the regulation is arbitrarily incomplete so that its impact in limiting the use of land plainly outweighs, in a substantive due process sense, the public benefit to be derived from such wide-ranging protection against flooding and siltation. That much being established as to those two purposes, the presumption of validity cannot be extended infinitely by the supposition that many more unnamed purposes may be likely.

The order below is affirmed.

ORDER

Now, January 11, 1982, the order of the Court of Common Pleas of Chester County entered August 10, 1979, at No. 51 of January Term 1978, is affirmed.

This decision was reached prior to the expiration of the term of office of Judge PALLADINO.

Judges MENCER and WILLIAMS, JR. dissent.