**LAUREL POINT ASSOCIATES,**
**Appellant**

v.

**SUSQUEHANNA TOWNSHIP ZONING**
**HEARING BOARD.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2005.

Decided Nov. 28, 2005.

chapter, it may in its discretion find that any or all official action taken at the meeting shall be invalid.

Charles E. Zaleski, Camp Hill, for appellant.

Bruce D. Foreman, Harrisburg, for appellee.

BEFORE: COLINS, President Judge, and FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Laurel Point Associates (Laurel Point) appeals from the December 14, 2004, order of the Court of Common Pleas of Dauphin County (trial court), which affirmed the decision of the Susquehanna Township (Township) Zoning Hearing Board (ZHB) to deny Laurel Point's application for a validity variance. We also affirm.

Laurel Point owns a four-plus acre tract of unimproved land (Property) located on the south side of Linglestown Road in the Township. (ZHB's Findings of Fact, Nos. 1, 2.) The Property is zoned R–1, low density residential, which does not permit commercial office buildings.[1] (ZHB's Findings of Fact, No. 5.) However, desiring to build commercial office buildings on the Property, Laurel Point filed a request for a validity variance with the ZHB. In doing so, Laurel Point alleged that the Township Zoning Ordinance (Ordinance), as applied to the Property, does not allow the Property to be used in a reasonable manner. The ZHB held three hearings on the matter, at which both Laurel Point and the Township presented witnesses.

Stan Custer, Jr. (Custer), Laurel Point's president, testified that, when Laurel Point purchased the Property for $150,000 in November 1999, the Property consisted of six separate lots (in one deed), each fronting on Linglestown Road. (ZHB's Findings of Fact, Nos. 4, 12; R.R. at 17a, 30a.) Custer acknowledged that, at the time of purchase, Laurel Point was aware that the Property's zoning classification prohibited the construction of commercial office buildings on the Property. (ZHB's Findings of Fact, Nos. 5, 6; R.R. at 17a, 23a–24a.) However, Custer explained that he knew the Township was reviewing its Comprehensive Plan and considering a proposal to designate a portion of the

south side of Linglestown Road, including the Property, as a transitional overlay zone that would allow for some non-residential uses.[2] (ZHB's Findings of Fact, Nos. 7, 9; R.R. at 17a–20a, 26a.) Custer stated that he participated in the Township's review of the Comprehensive Plan by attending meetings and sending letters in which he opined that the Property was not suitable for single family residential development because there has not been a residential home built along Linglestown Road in the Property's vicinity in more than twenty-five years. (ZHB's Findings of Fact, No. 8; R.R. at 18a–19a, 20a.) According to Custer, it is impractical to develop the Property residentially because, given the cost of the necessary improvements, one would have to sell a home on the Property for $500,000, and there is no market for such a home at this location. (R.R. at 21a–22a.) On cross-examination, Custer admitted that if the Property were divided into six residential lots with access to Linglestown Road via a private street, it would comply with the Ordinance. (ZHB's Findings of Fact, No. 13, R.R. at 30a–32a.) Nevertheless, Custer maintained that given the topography of the Property and its dimensions, such development was not a viable option.[3] (R.R. at 32a.)

William F. Rothman, an expert in appraisal and real estate market analysis expressed a similar opinion. Rothman tes-

---

1. The R–1 district permits single family homes, municipal buildings and cemeteries, as well as agricultural, church and horse stable uses. (ZHB's op. at 1, n. 3.)

2. The Comprehensive Plan, as adopted, contains no such overlay zone. (ZHB's Findings of Fact, No. 10.)

3. Custer testified that the approximate dimensions of the Property are: 182 feet along the west side; 770 feet along the north side; 245 feet along the east side; and 845 feet on the south side. (ZHB's Findings of Fact, No. 2;

R.R. at 16a.) The Property's elevation varies from 445 feet in the northeast corner to 385 feet in the southwest corner. (ZHB's Findings of Fact, No. 3; R.R. at 17a.) Custer further testified that the Property is bordered by a hospice property on the west, a two-story home to the east and open space and a ravine to the south; on the north side of the Property across Linglestown Road is an office complex, with three and four-story office buildings, which is accessed at a signalized intersection on Linglestown Road. (ZHB's Findings of Fact, No. 2; R.R. at 16a.)

tified that since 1995, only nineteen homes have sold along Linglestown Road, and these homes range in size from 1,000 to 2,000 square feet with prices ranging from $57,000 to $147,000. (R.R. at 77a.) Rothman opined that, although there is a market for existing, "modest" homes, there is no market for new home construction, particularly at $500,000, along Linglestown Road. (R.R. at 79a, 82a.) Rothman further opined that although the location might be desirable for other permitted uses, such as a church or hospice, such a market exists only for existing buildings because the cost of new construction for those uses is prohibitive. (R.R. at 82a–86a.) On cross-examination, Rothman admitted that the Property, when divided into six to eight lots, appropriately graded and filled, would be worth $40,000 per lot. (R.R. at 94a–95a.) However, Rothman stressed that the cost to fill and grade the lot is unknown. (R.R. at 95a.)

Laurel Point also presented Richard N. Koch, an expert in land use and planning, whose testimony revealed that along Linglestown Road from Route 322 to Progress Avenue, there are some vacant properties, numerous residential properties with reverse frontage on Linglestown Road (i.e., the access is from another street), a signalized intersection in front of the Property and several homes exiting onto Linglestown Road; indeed, Koch described at least seven single-family homes fronting Linglestown Road immediately to the east of the Property. (R.R. at 127a–31a.) Koch also noted that various commercial uses, such as a gas station, a shopping center, professional office buildings, a funeral home, a Township office building and a church, are situated to the east of those homes. (R.R. at 131a–38a.) Koch opined that, because of the Property's size, topography and location along a highway and at a signalized intersection, and because of the nearby office and commercial uses, the Property is not suitable for development consistent with the R–1 zoning classification. (R.R. at 155a–56a, 159a.)

In an effort to show that Linglestown Road is no longer a "lightly traveled road through a bedroom community," Laurel Point presented the testimony of Keith Chase, an expert in transportation planning. (R.R. at 49a–50a.) Chase testified that Linglestown Road is a state highway that carries approximately 22,300 vehicles per day along the portion from Route 322 to Progress Avenue and that the traffic is projected to increase to 27,800 vehicles per day by 2012, and 34,900 vehicles per day by 2022. (R.R. at 51a–53a.)

In opposition to the requested variance, the Township presented the testimony of Mark E. Lewis (Lewis), an expert in project development and traffic, and Francis R. Kessler, the Township zoning officer. (R.R. at 272a–73a, 322a.) Both Lewis and Kessler testified that the Property could be developed in compliance with the Ordinance. They stated that the Property, as currently subdivided, could be developed with six single family homes, and that, if re-subdivided, the Property could be developed into seven lots with seven single family homes. (R.R. at 276a–77a, 326a–27a.)

Edward S. Finkelstein (Finkelstein) also testified in opposition to Laurel Point's application. Finkelstein's property is within approximately ten feet of Laurel Point's Property, separated from the Property by a small abandoned park. (R.R. at 266a.) Finkelstein testified that he is ready, willing and able to purchase the Property and develop it residentially and that he offered to purchase the Property from Laurel Point for $60,000. (R.R. at 345a, 353a.)

After reviewing the evidence, the ZHB applied the variance criteria set forth in section 910.2(a) of the Pennsylvania Mu-

nicipalities Planning Code (MPC)[4] and concluded that Laurel Point failed to demonstrate the requisite unnecessary hardship. Additionally, the ZHB concluded that it could not grant a variance in this case because, through its application, Laurel Point was seeking a rezoning, which is outside the ZHB's authority. Accordingly, the ZHB denied Laurel Point's application. Laurel Point appealed to the trial court, which affirmed. Laurel Point now appeals to this court.[5]

■ Laurel Point argues that the ZHB erroneously applied the standards applicable to a "normal" variance, as set forth in section 910.2 of the MPC, when it should have applied the standards governing validity variances.[6] Additionally, Laurel Point argues that the ZHB erred by failing to fairly make findings of fact and conclusions of law based on the evidence of record, which Laurel Point asserts established that it met the standards for a validity variance.[7]

■ A validity variance "is based on the theory that an otherwise valid ordinance is confiscatory when applied to a particular tract of land, in that it deprives the owner of any reasonable use of his property." *A & D, Inc. v. Zoning Hearing Board*, 32 Pa.Cmwlth. 367, 379 A.2d 654, 656 (1977). In such a case, the issuance of a variance is necessary to permit a reasonable use of the land and, thus, prevent an unconstitu-

---

4. Section 910.2(a) of the Act of July 31, 1968, P.L. 805, *added by* section 89 of the Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. § 10910.2(a), states:

   The board may grant a variance, provided that all of the following findings are made where relevant in a given case:

   (1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

   (2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

   (3) That such unnecessary hardship has not been created by the appellant.

   (4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

   (5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

5. Where, as here, the trial court took no additional evidence, our scope of review is limited to determining whether the ZHB committed a manifest abuse of discretion or an error of law. *Hersh v. Zoning Hearing Board*, 90 Pa. Cmwlth. 15, 493 A.2d 807 (1985). This court may conclude that the ZHB abused its discretion only if its findings are not supported by substantial evidence. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 555, 462 A.2d at 640.

6. Nevertheless, Laurel Point maintains it also met the requirements for a "normal" variance.

7. Laurel Point also argues that the ZHB erred when it improperly characterized Laurel Point's validity variance as a request for rezoning and denied the variance on this ground. However, we need not address this argument because to the extent that the ZHB may have erred in this regard, it would be harmless error where, as will be discussed, Laurel Point did not meet its burden to establish that it was entitled to a validity variance.

tional taking of the applicant's property.[8] *Shohola Falls Trails End Property Owners Association, Inc. v. Zoning Hearing Board,* 679 A.2d 1335 (Pa.Cmwlth.1996), *appeal denied,* 548 Pa. 651, 695 A.2d 788 (1997); Ryan, Robert S., 1 Pennsylvania Zoning Law and Practice (Ryan), § 6.1.7 at 9 (2005). This court has held that, to obtain a validity variance, the applicant must establish that: (1) the effect of the regulations complained of is unique to the applicant's property and not merely a difficulty common to other lands in the neighborhood; and (2) the regulation is confiscatory in that it deprives the owner of the use of the property. *Chrin Brothers, Inc. v. Williams Township Zoning Hearing Board,* 815 A.2d 1179 (Pa.Cmwlth.2003); *Shohola Falls; Hersh v. Zoning Hearing*

*Board,* 90 Pa.Cmwlth. 15, 493 A.2d 807 (1985).

Contrary to Laurel Point's assertion, this court has held that a party seeking a validity variance must also comply with the variance requirements set forth in section 910.2 of the MPC.[9] Moreover, as Laurel Point acknowledges, the element of confiscation, i.e., depriving the owner of use of the property, is similar to demonstrating an unnecessary hardship for a "normal" variance. (Laurel Point's brief at 12, n. 31.) Indeed, in a validity variance case, the key is the actuality of confiscation, and confiscation is the unnecessary hardship. *Zoning Hearing Board v. Lenox Homes, Inc.,* 64 Pa.Cmwlth. 74, 439 A.2d 218 (1982).

**8.** "A validity variance differs from a 'normal' variance in that the normal variance is granted to adjust the zoning regulation to the particular property." *Shohola Falls Trails End Property Owners Association v. Zoning Hearing Board,* 679 A.2d 1335, 1341 (Pa.Cmwlth. 1996), *appeal denied,* 548 Pa. 651, 695 A.2d 788 (1997).

**9.** *See Boundary Drive Associates v. Shrewsbury Township Board of Supervisors,* 81 Pa. Cmwlth. 7, 473 A.2d 706 (1984), *aff'd,* 507 Pa. 481, 491 A.2d 86 (1985) (holding that an applicant for a validity variance must also meet the requirements of section 912 of the MPC, the predecessor to section 910.2). Additionally, the Township Ordinance incorporates section 910.2 of the MPC. (ZHB's op. at 3, n. 4; R.R. at 576a.)

We note, however, that section 910.2 of the MPC requires a ZHB to make findings "where relevant." This implies that not all criteria must be satisfied in every case and that the quantum of proof necessary to establish a particular criterion may vary depending on the type of variance sought. *See Hertzberg v. Zoning Board of Adjustment,* 554 Pa. 249, 721 A.2d 43 (1998) (stating that the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation); *Great Valley School District v.*

*Zoning Hearing Board,* 863 A.2d 74 (Pa. Cmwlth.2004) (stating that the stringency of the standard in proving unnecessary hardship varies depending on whether a use or dimensional variance is sought), *appeal denied,* 583 Pa. 675, 876 A.2d 398 (2005); Ryan § 6.2.3 at 18 (noting that if section 910.2 of the MPC were read as prohibiting a variance unless all of the criteria are established, then subsection (2) would eliminate all but validity variances). We also note that the criteria enumerated in section 910.2 of the MPC reflect the substantive due process analysis courts have employed in reviewing zoning schemes, which involves balancing the rights of a property owner to freely use his or her land against the interest of the public welfare which the zoning ordinance seeks to protect. *Cf. Shohola Falls* (discussing considerations with respect to the constitutionality of a zoning ordinance and reviewing such under a substantive due process analysis); *Hopewell Township Board of Supervisors v. Golla,* 499 Pa. 246, 452 A.2d 1337 (1982) (same). Indeed, subsections (1) through (3) of section 910.2 reflect more of the former notion, while subsections (4) and (5) reflect the latter and would become relevant only if a ZHB finds that an applicant has sustained its burden under subsections (1) to (3), because subsections (4) and (5) look to the future and address the proposed change to the property, i.e., they evaluate the variance as it would be authorized.

Laurel Point's contention on appeal really involves the proper evidentiary approach to determining whether the Ordinance is confiscatory. To establish the confiscatory nature of a zoning regulation, an applicant must prove that the land has no value or only distressed value, i.e., is "valueless," as a result of the regulation. *Chrin Brothers; Shohola Falls; Hersh.* To meet this burden, an applicant must demonstrate that: "(1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) that the property can be conformed for a permitted use only at a prohibitive expense; or (3) that the property has no value for any purpose permitted by the zoning ordinance." *Hertzberg v. Zoning Board of Adjustment,* 554 Pa. 249, 257, 721 A.2d 43, 47 (1998); *see also Allegheny West Civic Council, Inc. v. Zoning Board of Adjustment,* 547 Pa. 163, 689 A.2d 225 (1997).[10] Additionally, in *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983), our supreme court permitted a landowner to establish that her property had no value by demonstrating that incompatible uses virtually surrounded her property. Bearing in mind Laurel Point's heavy burden of proof here,[11] we conclude that it simply failed to establish, under any evidentiary

approach, that the Ordinance prohibits Laurel Point from making use of the Property for any permitted purpose and, therefore, is confiscatory. *See A & D, Inc.*

First, the ZHB found the Property has no unique physical features which prevent it from being developed in accordance with the Ordinance because the Property's physical features allow it to be divided into multiple residential lots.[12] (ZHB's Findings of Fact, Nos. 2, 11, 13; Ordinance § 602; R.R. at 32a, 276a–77a, 326a–27a, 435.) Second, the ZHB found that Laurel Point failed to establish the true market value of the Property or the overall development costs and how those figures translate to a final cost which makes development of the Property for any permitted purpose prohibitive. Third, the ZHB found that the Property, when divided into seven residential lots and appropriately filled and graded, would have a fair market value of at least $40,000 per lot, or $280,000 in total.[13] (ZHB's Findings of Fact, No. 18; R.R. at 94a–95a.) Our review of the record shows that these findings are supported by substantial evidence. Finally, Laurel Point failed to establish its entitlement to a validity variance by demonstrating that it cannot make use of the Property as zoned because incompatible

---

**10.** *Hertzberg* and *Allegheny West* involved "normal" variances, rather than validity variances and, thus, set forth these methods in the context of establishing unnecessary hardship. However, like the ZHB, we find that law to be applicable here, given that the confiscation is the unnecessary hardship. *See Lenox Homes.*

**11.** *See Shelley v. Zoning Hearing Board,* 71 Pa.Cmwlth. 153, 454 A.2d 664 (1983) (stating that a party seeking a validity variance bears a particularly heavy burden where the variance is sought to permit commercial use in a residential district).

**12.** Contrary to Laurel Point's assertions, the ZHB did not ignore its evidence in this regard; rather, the ZHB, in its role as fact-

finder, rightfully rejected this evidence in favor of other evidence. *See Hersh.*

**13.** Although the ZHB did not base its conclusion that the Property had value on Finkelstein's testimony, we note that the ZHB also found that the Property has a fair market value of at least $60,000, based on Finkelstein's testimony. (ZHB's Findings of Fact, No. 24; R.R. at 345a, 353a.) We recognize that the mere fact that someone is willing to pay for land to keep it vacant does not establish that the land can be *used* as zoned. Ryan § 6.2.4 at 20. However, Finkelstein testified that he would like to purchase the Property in order to build a single family residence on it. (R.R. at 345a.)

uses surround the Property. Although Laurel Point argues that it made such a showing, the ZHB is the fact-finder, *Hersh,* and rightfully rejected this evidence in favor of other contrary evidence that fully supports the ZHB's finding that the Property is not surrounded by incompatible uses.[14]

■ Here, much of Laurel Point's evidence consisted of conclusory opinions as to the Property's alleged unsuitability for residential use; moreover, as a whole, this evidence establishes only that Laurel Point cannot make the profit it desires on the Property. Importantly, Laurel Point's self-proclaimed inability to make a profit appears to be self-inflicted and the result of an unfortunate business decision. It is apparent that Laurel Point gambled and knowingly paid a commercial price for the residentially-zoned Property in hopes of obtaining a variance or expecting that the Property's zoning would be changed.[15] Although we might agree that the Property is not the best site for residential development and that it would be more profitable for Laurel Point to develop the Property commercially, that does not entitle Laurel Point to a validity variance; a landowner is not entitled to a validity variance simply because an ordinance deprives the landowner of the most lucrative and profitable uses. *McGonigle v. Lower Heidelberg Township Zoning Hearing Board,* 858 A.2d 663 (Pa.Cmwlth.2004); *A & D, Inc.; see Valley View.* The type of economic loss alleged here simply does not equate to confiscation justifying a validity variance. *See Harper v. Zoning Hearing Board,* 21 Pa.Cmwlth. 93, 343 A.2d 381 (1975).

Because the record contains substantial evidence to support the ZHB's finding that the Property can be used as zoned, we must conclude that the effect of the Ordinance on the Property is not confiscatory. Accordingly, we affirm.

### ORDER

AND NOW, this 28th day of November, 2005, the order of the Court of Common Pleas of Dauphin County, dated December 14, 2004, is hereby affirmed.

DISSENTING OPINION BY President Judge COLINS.

I must dissent. The fact that there has not been a residential home built along Linglestown Road in the property's vicinity for more than 25 years establishes that it is totally impracticable to develop the property for single-family residential use on this heavily-traveled state highway.

I would reverse and grant the validity variance.

---

14. In fact, the Property is bordered by a hospice, a two-story home and open space, all uses that are consistent with the R–1 zoning classification. (ZHB's Findings of Fact, No. 2; Ordinance § 602; R.R. at 435a.) Further, Koch testified that there are numerous residential homes along Linglestown Road in the immediate vicinity of the Property, including at least seven single-family homes fronting Linglestown Road immediately to the east of the Property. (R.R. at 127a–31a.)

15. We do not hold that Laurel Point's knowledge of the R–1 zoning classification alone precludes a variance. *See Harper v. Zoning Hearing Board,* 21 Pa.Cmwlth. 93, 343 A.2d 381 (1975) (stating that knowledge of the hardship does not alone preclude a variance but a hardship is self-inflicted where a landowner has paid a high price for property based on the assumption that a variance which he anticipated would justify that price).