Lamont Palmer,                  :
           Appellant           :
                                    :
          v.                         :
                                    :
Susquehanna Township Zoning   :    No. 1235 C.D. 2023
Hearing Board                :    Submitted: December 9, 2024

BEFORE:    HONORABLE ANNE E. COVEY, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE STACY WALLACE, Judge

OPINION BY
JUDGE COVEY                            FILED: February 4, 2025

Lamont Palmer (Applicant) appeals from the Dauphin County Common Pleas Court's (trial court) October 4, 2023 order affirming the Susquehanna Township (Township) Zoning Hearing Board's (ZHB) decision that denied his application for a variance to establish a multi-family dwelling on the property located at 2011 Clayton Avenue, Harrisburg, Pennsylvania (Property). Applicant presents two issues for this Court's review: (1) whether the ZHB erred by determining that he did not satisfy the required variance criteria; and (2) whether the ZHB erred by holding that Applicant's ability to use the Property as a single-family dwelling eliminates his hardship.[1] After review, this Court affirms.

---

[1] This Court has explained:

> Where the trial court does not accept additional evidence, this Court determines on review whether the [ZHB] committed an error of law or "a manifest abuse of discretion." *Valley View Civic Ass['n] v. Zoning B[d.] of Adjustment*, . . . 462 A.2d 637, 639 ([Pa.] 1983). A

The Property, which is located in the Township's R-2 Medium Density Residential Zoning District (R-2 zone), features a house that was built in 2011 with a finished basement and a garage. The house is approximately 3,000 square feet and has 6 bedrooms and 4 bathrooms. The finished basement is approximately 1,500 square feet and has a kitchen, 2 bedrooms, 2 bathrooms, and a living room. The finished basement has an entrance to access it from the outside, separate from the entrance to the main dwelling unit on the Property. The garage is approximately 1,300 square feet (36 x 36) and contains a 500-square-foot apartment that includes a kitchen, bedroom, and bathroom. Applicant's family members previously resided at the Property with him; however, they no longer currently live there. Applicant currently lives at the Property with his youngest son. The Property is listed as a single-family dwelling, which is a permitted use in the R-2 zone.

On or about November 28 and December 7, 2022, the Township's Zoning Administrator issued zoning notices (Notices) to Applicant concerning the Property. The Notices informed Applicant that he was in violation of the Township's Zoning Ordinance[2] (Ordinance) because he was renting the Property as multiple, separate dwelling units, which was not permitted in the R-2 zone under the Ordinance.

Applicant appealed from the Notices and included an application for a variance (Application) pursuant to Section 2612 of the Ordinance for a multi-family dwelling use in the R-2 zone in accordance with Ordinance Use Regulation Section

zoning [hearing] board abuses its discretion "only if its findings are not supported by substantial evidence." *Id*. at 640.

*Sowich v. Zoning Hearing Bd. of Brown Twp.*, 245 A.3d 1188, 1195 n.3 (Pa. Cmwlth. 2021). Applicant's Statement of the Questions Involved focuses on whether the trial court erred. *See* Applicant Br. at 4. However, because the trial court took no additional evidence, this Court considers whether the ZHB erred. Thus, this Court has rephrased Applicant's issues accordingly.

[2] Susquehanna Twp., Pa., Zoning Code, Ord. 3-12, *as amended*, Ordinance §§ 27-101 - 27-2622, adopted Sept. 24, 2003.

27-2008 or, in the alternative, a residential conversion to a multi-family dwelling use in accordance with Ordinance Use Regulation Section 27-2009.

The ZHB held a hearing on the appeal and Application on February 16, 2023. At the hearing, Applicant withdrew his appeal from the Notices and pursued the Application. Applicant, Christina Freytes (Applicant's employee), Jamie Folks (the Property's neighbor), and the Township Zoning Administrator, testified at the hearing. Applicant related that he intends to rent the basement unit and the garage unit on the Property as an Airbnb. Applicant also stated that there will not be any changes or alterations to the house's interior or exterior. Applicant noted that the Property is in close proximity to multi-family dwellings and single-family dwellings, and that Applicant owns three multi-family dwellings in the Property's vicinity.[3] The ZHB denied the Application and issued a written decision on March 23, 2023 (Decision). Therein, the ZHB concluded, in pertinent part:

> Applicant requested a use variance for a multi[-]family dwelling on the [P]roperty in accordance with Use Regulation Section 27-2008 or[,] in the alternative, a residential conversion to a multi[-]family dwelling use in accordance with Use Regulation Section 27-2009. The [P]roperty is and can continue to be used in strict conformity with the [] Ordinance as a single-family dwelling; a permitted use in the R-2 zone. As such, Applicant has failed to present evidence sufficient to prove a hardship for a use variance.

Reproduced Record (R.R.) at 99a-100a (footnote omitted). On April 19, 2023, Applicant appealed from the Decision to the trial court. On June 5, 2023, the trial court held oral argument but did not take new evidence in the matter. On October 4, 2023, the trial court denied Applicant's appeal. Applicant appealed to this Court.

---

[3] At the ZHB hearing, Applicant confirmed that the other multi-family dwellings have been multi-family dwellings "probably since [he] bought them[,]" and "are clearly grandfathered[]" as a permitted nonconforming use. Reproduced Record at 52a.

3

Applicant first argues that the ZHB erred by holding that Applicant did not meet the variance criteria because he failed to demonstrate necessary hardship. Applicant asserts:

> [The P]roperty has a unique physical circumstance, which has created [a] hardship, in that the units [Applicant] wishes to use as short-term rentals already exist and were approved by the Township when they were built in 2011. When approved[,] no restriction was placed on the use of these units[;] however[,] now, the Township seeks to restrict [Applicant's] use of the entire [P]roperty to single[-]family use only.
>
> This Court has looked at situations such as the one herein presented as a request for a validity variance, which includes situations where the ordinance has so strictly regulated a particular property so as to become confiscatory.

Applicant Br. at 9-10.

In *Nowicki v. Zoning Hearing Board of the Borough of Monaca*, 91 A.3d 287 (Pa. Cmwlth. 2014), this Court explained:

> A variance . . . is permission to deviate from the ordinance in either the dimensions of the improvements made to the land or in the use of the land. A variance is the proper relief where an unnecessary hardship attends the property; *a variance cannot provide relief where a hardship afflicts the property holder's desired use of the land and not the land itself.* Although zoning ordinances are to be liberally construed to allow for the broadest possible use of the land, *the applicant seeking a variance bears a heavy burden.* . . .
>
> Section 910.2 of the [Pennsylvania] Municipalities Planning Code (MPC)[][4] requires an applicant seeking a variance to show, where relevant:

---

[4] Act of July 31, 1968, P.L. 805, *as amended*, added by Section 89 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

(1) That there are unique physical conditions peculiar to the property and that the unnecessary hardship is due to those conditions;

(2) That because of the physical conditions, there is no possibility that the property can be developed in strict conformity with the zoning ordinance and that a variance is needed to enable reasonable use of the property;

(3) That unnecessary hardship has not been created by the applicant;

(4) That the variance is not detrimental to the public welfare; and

(5) That the variance is the minimum variance that will afford relief and is the least modification of the regulation at issue.

[*See*] 53 P.S. § 10910.2[.]

*Nowicki*, 91 A.3d at 291-92 (emphasis added; citations and footnote omitted).

The *Nowicki* Court observed:

Whether an applicant is seeking a use or a dimensional variance, the applicant must, at a minimum, demonstrate that an unnecessary hardship will result if a variance is denied and that the proposed use will not be contrary to the public interest. In the context of a use variance, an applicant must establish that an unnecessary hardship attends the land with evidence that: (a) the physical conditions of the property are such that it cannot be used for a permitted purpose; or (b) the property can be conformed for a permitted use only at a prohibitive expense; or (c) the property is valueless for any purpose permitted by the zoning ordinance. While an unnecessary hardship can be established by demonstrating that the hardship falls squarely within one of these three categories, in practice the evidence presented often does not fit neatly in one category or another but overlaps. When evaluating an unnecessary hardship, use of adjacent and surrounding land is relevant. Once an applicant has demonstrated that the property is subject to an unnecessary hardship, the party must also demonstrate that the

5

conditions are unique to the property; where the hardship is present in the district as a whole or in a portion of the district, the proper remedy is re-zoning rather than a variance.

The vast majority of instances where an unnecessary hardship attends the land arise from the physical characteristics of the property. . . . Less common than an unnecessary hardship due to the physical characteristics of the land . . . is an unnecessary hardship due to the prohibitive expense of conforming a property to a permitted purpose under the ordinance.

*Nowicki*, 91 A.3d at 292 (citations omitted).

The *Nowicki* Court then addressed situations like those presented in the instant case:

Rarer still[] are instances where an unnecessary hardship arises because the ordinance has rendered the property valueless for any permitted purpose . . . . The majority of these unnecessary hardships arise where the character of the surrounding properties are at odds with the ordinance, such as where the area is zoned commercial, but the surrounding properties are all residential, or vice versa. *See, e.g.*, *Wilson v. Plumstead T[wp.] Zoning Hearing B[d.]*, . . . 936 A.2d 1061, 1068 ([Pa.] 2007) (neighboring uses that were dissimilar and disharmonious was an insufficient basis for variance for residential use where the zoning was for mixed-use, specifically home-occupation use, as opposed to traditional residential use, and the character of the neighborhood reflected the type of use the ordinance was explicitly designed to provide); *Taliaferro v. Darby T[wp.] Zoning Hearing B[d.]*, 873 A.2d 807, 812 (Pa. Cmwlth. 2005) (variance granted to use property as a self-storage facility in district zoned residential where the applicant demonstrated that the property remained idle for over 50 years, that attempts to develop the property as residential were never implemented, and that the area surrounding the property was primarily commercial, including [a] major four-lane highway adjacent to the site). **Evidence that the zoned use is less financially profitable than the proposed use is insufficient to grant a variance**; however, **an applicant seeking a use variance need not demonstrate**

6

**that the property is rendered valueless as zoned in order to show that a variance is needed to make reasonable use of the property**.[5]

This last category of unnecessary hardship includes situations **where the ordinance has so strictly regulated a particular property so as to become confiscatory**. *Rice Fam*[.] *Tr*[.] *v. City of St. Marys*, 51 A.3d 913, 919 (Pa. Cmwlth. 2012). **The variance granted where an unnecessary hardship is shown because of the confiscatory nature of a zoning ordinance is often referred to as a "validity variance."** *Laurel Point Assoc*[s.] *v. Susquehanna T*[wp.] *Zoning Hearing B*[d.], 887 A.2d 796, 801 (Pa. Cmwlth. 2005) ("in a 'validity variance' case, the key is the actuality of confiscation, and confiscation is the unnecessary hardship[]"). The term "validity variance" is a misnomer in that it implies that this subset of variances is separate and apart or requires a showing different than that required for granting a "normal" variance. However, **whether an applicant terms the variance sought as a "validity variance" or not**, **like all other variances**, **it will only be granted where an unnecessary hardship is demonstrated and the relevant criteria from Section 910.2 of the MPC has been satisfied**. *Hunt v. Zoning Hearing B*[d.] *of Conewago T*[wp.], 61 A.3d 380, 384 (Pa. Cmwlth. 2013). The only distinction with a difference among variances, be it use, dimensional or validity, is the criteria from Section 910.2 of the MPC that is considered relevant.

*Nowicki*, 91 A.3d at 293 (emphasis added; citations omitted).

---

[5] The Pennsylvania Supreme Court has explained:

> Showing that the property at issue is "valueless" unless the requested variance is granted "is but one way to reach a finding of unnecessary hardship; it is not the only factor nor the conclusive factor in resolving a variance request." [*Hertzberg v. Zoning Bd. of Adjustment*, 721 A.2d 43, 48 (Pa. 1998)]. Rather, "multiple factors are to be taken into account" when assessing whether unnecessary hardship has been established.

*Marshall v. City of Philadelphia*, 97 A.3d 323, 330 (Pa. 2014).

7

In *Hunt*, this Court observed:

A validity variance "differs from the 'normal variance' in that the 'normal variance' is granted to adjust the zoning regulation to the particular property; a validity variance holds that the zoning regulation is restrictive to the point of confiscation and requires the issuance of a variance permitting a *reasonable* use of the land." *Hersh v. Zoning Hearing Bd. of Marlborough Twp.*, . . . 493 A.2d 807, 811 ([Pa. Cmwlth.] 1985) (emphasis added). When a validity variance is warranted, its issuance prevents an unconstitutional taking. *Laurel Point . . .* , 887 A.2d [at] 800-[]01 . . . . In other words, a validity variance request is asserted in circumstances that essentially merit a zoning amendment.

As we noted in *Laurel Point*, an applicant for a validity variance must satisfy numerous criteria. Where applicable, an applicant must establish that[:] "(1) the effect of the regulations complained of is unique to the applicant's property and not merely a difficulty common to other land in the neighborhood; and (2) the regulation is confiscatory in that it deprives the owner of the use of the property." *Id*. at 801. . . .

An applicant for a validity variance also must comply with the requirements for a variance found in Section 910.2 of the MPC. . . . [A]n applicant need not meet each and every element necessary for the grant of a variance in order to establish grounds for a validity variance. Section 910.2(a) of the MPC requires a zoning hearing board to make findings regarding the variance criteria "where relevant," meaning that "not all criteria must be satisfied in every case and that the quantum of proof necessary to establish a particular criterion may vary depending on the type of variance sought." *Laurel Point*, 887 A.2d at 801 n.9. Accordingly, the fact that there were other so-called landlocked properties without the requisite road frontage should not have automatically invalidated [a]pplicants' request for a validity variance.

Finally, in order to demonstrate that a property has no value or only a distressed value as a result of the regulation, an applicant for a validity variance must establish that: "(1) the physical features of the property are

8

such that it cannot be used for a permitted purpose; or (2) that the property can be conformed for a permitted use only at a prohibitive expense; or (3) that *the property has no value for any purpose permitted by the zoning ordinance*." *Id*. at 802 (emphasis added).[6]

*Hunt*, 61 A.3d at 383-85 (footnotes omitted).

Before addressing Applicant's argument that he was entitled to a validity variance, this Court must consider the ZHB's contention that Applicant waived his argument that he is entitled to a validity variance because he did not raise it before the ZHB or the trial court. The law is well established that "[i]n zoning cases, **a new and different theory may not be advanced for the first time on appeal without the permission of the common pleas court**." *Segal v. Zoning Hearing Bd. of Buckingham Twp.*, 771 A.2d 90, 94 (Pa. Cmwlth. 2001) (emphasis added). This Court has explained:

> Section 1005-A of the [MPC, added by Section 101 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11005-A,] provides that, upon motion by the parties, the trial court may receive additional evidence if necessary for proper consideration of the appeal. If [the] parties do not request that the trial court hear additional evidence, they waive arguments which were not raised before the [zoning hearing] board. *See Segal* . . . (applicant's failure to argue entitlement to a *de minimis* variance before the zoning [hearing] board resulted in waiver since permission was not obtained from [the] trial court to raise [a] new argument); *Myers v. State Coll*[.] *Zoning Hearing*

---

[6] While the analysis of whether a validity variance should be granted and whether an ordinance violates a property owner's substantive due process rights are similar and must be raised before the zoning hearing board in the first instance, each is a distinct legal issue, as is the additional question of whether a regulation found valid under a substantive due process analysis nevertheless fails to pass constitutional muster because the ordinance works a taking without just compensation.

*Delchester Devs., L.P. v. Zoning Hearing Bd. of the Twp. of London Grove*, 161 A.3d 1081, 1089 n.6 (Pa. Cmwlth. 2017).

*B*[*d.*], . . . 530 A.2d 526 (Pa. Cmwlth. 1987) (where vested right claim was first advanced before the trial court, applicant waived that claim since the record was devoid of any application or motion to have the trial court allow that claim to be raised). This approach ensures that the fact[-]finder has a full opportunity to create a reviewable record on all issues.

*Soc'y Created to Reduce Urban Blight (SCRUB) v. Zoning Bd. of Adjustment*, 804 A.2d 116, 119 (Pa. Cmwlth. 2002) (footnote omitted).

Here, "[t]he record does not reflect that [Applicant] claimed that "the zoning regulation is restrictive to the point of confiscation[,]" *Hunt*, 61 A.3d at 383, or otherwise raised the issue to the ZHB. Further, the record does not demonstrate that Applicant requested that the trial court hear additional evidence or sought the trial court's permission to advance the validity variance argument. Thus, Applicant has waived that argument.

With respect to whether the ZHB properly concluded Applicant is not entitled to a variance, this Court has explained:

A party seeking a variance bears the burden of proving that an unnecessary hardship will result if the variance is not granted and also that the variance will not be contrary to the public interest. **Absent a finding that property will be rendered valueless**, **financial hardship alone is not a sufficient basis for granting a variance**. **Property owners do not have a right to utilize land for their highest and best financial gain**.

*SCRUB*, 804 A.2d at 119-20 (emphasis added; citations omitted).

Applicant described his original use of the Property as follows:

[A] I had the house built in 2011.

Q And have you always occupied the house yourself?

A No. When I built the house, my mother - she was still living and she was sick. So[,] I had built a room for her that people could come visit her . . . from the outside, that they didn't have to come into the main house. And I had

10

finished a basement because my uncle -- he was taking care of my mom because she really couldn't be left alone. So[,] I finished the basement so he could move into the basement and take care of her while I was out working.

Q And so the house itself, it has three separate dwelling units; is that correct?

A Correct.

R.R. at 17a-18a.

With respect to his endeavor to use the Property for short-term rentals,

Applicant stated:

Q And at this stage, are your family members still residing in these units?

A No. My mom passed on, my uncle moved on, and my son -- he has his own family now.

Q So at this point, or at a certain point recently, the units became vacant?

A Yeah, well, they were vacant for maybe two years, two and a half years. And I got this idea - I really didn't want to rent it out long-term because I didn't want people underneath me. Like, I didn't want tenants --

That's what I do for a living. I'm a property manager, and I own real estate. And I deal with tenants all day long. And, like -- it gets kind of rough, so I didn't want them underneath me, and I didn't want them in the back of me. So[,] I just left the[ units] empty.

**And a friend of mine**, **he was telling me about how he went out of town and rented his house with Airbnb**. **And he was telling me how nice it was**.

**And I was like**, "**Wow**, **I wonder if I could do that with the basement**?"

So[,] **I went online and I started messing with it**. And I put it up on August [1, 2022]. And that same day, I had some people coming from Massachusetts on their way to Florida, and they booked it.

11

**And I was like**[:] "**Wow**. **This was great**." **So**[,] **I just left it up there**. And the people were just people that are coming for, like, the Farm Show. They would come in, the vendors come and rent it for the week and then they would go back.

R.R. at 19a-20a (emphasis added).

Applicant expounded:

Q Now . . . in terms of how you intend to rent th[e] [P]roperty, what are your intentions moving forward?

A **I would love to do what I've been doing and that's - - I enjoy people**. **I enjoy people visiting**. **I enjoy hosting people**. And I really enjoy doing -

. . . .

A **I really enjoy doing the Airbnb**. **So**[,] **if granted**, **I would like to continue to do the Airbnb and not have no** [sic] **one live under me full**[ ]**time**.

. . . .

Q And do you have any family left that can occupy these units?

A No. Unfortunately, my mom is dead, my dad is dead, my brother just died of COVID, my sister is dead. It's just pretty much me. And I have some kids. But now, I'm about to be an empty nester because one's 17, one's 18, and one's 13, so.

Q And if you could -- the main part of the house that you occupy, approximately how many square feet is that?

A About 3,000.

Q And so is there really any necessity to add these other units to the main portion of the house?

A No, no. The main portion has six bedrooms, four baths. There's no need.

Q So it's already too large?

12

A   Yeah. I'm just in my bedroom, and the 13-year-old that's home, he's just in his bedroom. So that's all we have.

R.R. at 26a-27a (emphasis added).

Finally, Applicant recounted:

When we built the house, we had all the work done, and it had to be inspected because we couldn't move in until we got an occupation inspection. So[,] all the work was done while my mom was sick. I built the house because I lived in the house next door, and it wasn't big enough because she needed more -- she needed more hands-on care. So[,] I built the house with the intentions, went over it with [Township Inspector] Albert Wrightstone --

And I looked for my permit that I got. And I keep all of that stuff, and it's around the house somewhere. But it just wasn't where I thought it was. But I looked for the permit. It definitely had – [n]ow, **I'm not saying that when I built it**, **I was saying**, "[t]**his was going to be multi**[-]**family**." But the basement was finished, and the garage was going to be there, but **it was meant for family**. **It wasn't meant for multi** -- I mean, it was my family -- . . . -- but it wasn't multi[-]family. So[,] it's a possibility that it definitely doesn't say "multi[-]family" because it was my family, but all of the stuff was built for my family -- for me and my family.

R.R. at 34a-35a (emphasis added).

Nothing in Applicant's testimony or the record evidence reflects substantial hardship or hardship beyond the possible short-term rental income loss. Further, assuming, *arguendo*, that Applicant had not waived his validity variance argument, the record evidence does not demonstrate that "(1) the effect of the regulations complained of is unique to [Applicant's] property and not merely a difficulty common to other land in the neighborhood; and (2) the regulation is confiscatory in that it deprives [Applicant] of the use of the [P]roperty." *Hunt*, 61 A.3d at 384 (quoting *Laurel Point*, 887 A.2d at 801). Nor does the record evidence

13

"establish that: '(1) the physical features of the [P]roperty are such that it cannot be used for a permitted purpose; or (2) [] the [P]roperty can be conformed for a permitted use only at a prohibitive expense; or (3) [] *the [P]roperty has no value for any purpose permitted by the* [] [*O]rdinance*.'" *Hunt*, 61 A.3d at 385 (quoting *Laurel Point*, 887A.2d at 802). Applicant's residence in and use of the Property as a single-family home demonstrates that the Ordinance "is [not] restrictive to the point of confiscation[,]" *Hersh*, 493 A.2d at 811, as Applicant has not been denied the Property's reasonable, zoned use.[7] Accordingly, the ZHB did not err by holding that Applicant did not meet the variance criteria because he failed to demonstrate necessary hardship.

Applicant also argues that "while [he] can in fact use the [P]roperty as a single[-]family home, enforcement of the Ordinance such that single[-]family use is the only use that can be made of the [P]roperty is confiscatory." Applicant Br. at 18. However, this Court has emphasized:

> "[I]t is well[-]settled law in Pennsylvania that a municipality may enact zoning ordinances reasonably restricting the property right to protect and promote the

---

[7] Applicant testified that he was unaware that the Property was zoned single family when he built the home. *See* R.R. at 32a. According to Applicant, the Township approved the home's construction with separate living units, and, thus, the Township implicitly consented to the Property's use as a multi-family dwelling despite the Ordinance's single-family restriction. This Court observes that the Property's building plans described the building as a "two-story, single-family dwelling[,]" and after construction, the Property was used consistent therewith until the units became vacant. R.R. at 34a. Only then did Applicant express his intent to use the Property as a multi-family dwelling. "One who commences a use without inquiry into whether it is permitted by the municipality's zoning ordinances does so at his own peril." *Hafner v. Zoning Hearing Bd. of Allen Twp.*, 974 A.2d 1204, 1212 (Pa. Cmwlth. 2009) (quoting *Appeal of Crawford*, 531 A.2d 865, 869 (Pa. Cmwlth. 1987)). Here, the Township approved the building plans as they were presented - a "two-story, single[-]family dwelling[.]" R.R. at 34a. Applicant's ignorance of the Ordinance's restrictions does not require this Court to disregard those restrictions now that Applicant no longer has the need to use the Property for the reason he built it.

14

public health, safety[,] and welfare under its police power." *Woll v. Monaghan Twp.*, 948 A.2d 933, 938 (Pa. Cmwlth. 2008).

> A basic purpose of zoning is to ensure an orderly physical development of the city, borough, township[,] or other community by confining particular uses of property to certain defined areas. . . .

*Hanna v. Bd. of Adjustment of the Borough of Forest Hills*, . . . 183 A.2d 539, 543 ([Pa.] 1962) (citation omitted).

*Omatick v. Cecil Twp. Zoning Hearing Bd.*, 286 A.3d 413, 421 (Pa. Cmwlth. 2022). The Township was empowered to designate the R-2 zone as single family and nothing in the record evidence establishes that the Ordinance's restriction limiting the Property's use to a single-family residence in the R-2 zone is confiscatory as applied to Applicant's single-family home use.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

15

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lamont Palmer,            :
           Appellant      :
                        :
        v.             :
                        :
Susquehanna Township Zoning  :    No. 1235 C.D. 2023
Hearing Board              :

## O R D E R

AND NOW, this 4th day of February, 2025, the Dauphin County Common Pleas Court's October 4, 2023 order is affirmed.

_____
ANNE E. COVEY, Judge