# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsy Supply, Inc.,             :

          Appellant     :

                             :

          v.             :   No. 334 C.D. 2015

                             :   Argued: September 17, 2015

The Zoning Hearing Board     :

of Silver Spring Township      :

                             :

          v.             :

                             :

Township of Silver Spring      :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge

               HONORABLE ANNE E. COVEY, Judge

               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**          **FILED: October 15, 2015**

In this zoning appeal, Pennsy Supply, Inc. (Applicant) asks whether the Court of Common Pleas of Cumberland County[1] (trial court) erred in affirming a decision of the Zoning Hearing Board of Silver Spring Township (ZHB) that rejected Applicant's substantive validity challenge to the Silver Spring Township Zoning Ordinance of 2013 (zoning ordinance) and denied Applicant's alternative request for a validity variance. Applicant argues the ZHB erred in concluding Applicant's property was not reverse spot zoned and was not treated unjustifiably different from similar surrounding land. Alternatively, Applicant asserts the ZHB erred in concluding a validity variance should not be granted in order to avoid an

---

[1] A panel consisting of President Judge Kevin A. Hess and Judges Albert H. Masland and Christylee L. Peck heard and decided Applicant's land use appeal. President Judge Hess authored the opinion on behalf of the panel.

unconstitutional confiscation of its property. Discerning no merit in these assertions, we affirm.

## I. Background

Applicant owns and operates an existing quarry in Silver Spring Township (Township), which lies in a Q Quarry zoning district. It also owns an adjacent, vacant 18.5-acre parcel, referred to as the Hempt Tract, located at the intersection of Millfording Road and Sample Bridge Road. The Hempt Tract lies in an R-1 Residential district. Applicant seeks to expand its quarrying operation onto the Hempt Tract.[2]

In November 2013, Applicant filed a substantive validity challenge to the zoning ordinance with the ZHB in connection with the proposed expansion of its quarrying activities on the Hempt Tract. Hearings ensued.

After hearings, the ZHB issued a decision in which it made the following relevant findings. The Hempt Tract was zoned R-1 Residential at the time Applicant purchased it. Applicant is the owner and operator of an existing quarry that abuts the eastern and southern sides of the Hempt Tract. The existing quarry, which began operations in 1959, has approximately 20 years of reserves to mine. It has a mining area of approximately 167 acres.

---

[2] An aerial image of the entire eastern portion of Silver Spring Township, including the Hempt Tract, which includes a transparent overlay of the Township Zoning Map is found in the Reproduced Record at 399a. A color copy of that document, which was admitted at the ZHB hearing as Exhibit 20, is also appended to the Township's brief.

The Hempt Tract is bordered to the west and north by land zoned R-1 Residential, including the Millfording Highlands residential development. Prior to its purchase by Applicant, the Hempt Tract was part of the Millfording Highlands residential development. Other than its geological suitability for quarrying, the Hempt Tract does not have any extraordinary physical features, it is relatively flat, and it is adjacent to the Millfording Highlands development. The geological suitability of the Hempt Tract for quarrying does not impact its suitability for development consistent with permitted uses in the R-1 district in which it lies. The Hempt Tract is similar to the properties to the north of the tract. It is not surrounded by land that is zoned other than or less restrictively than R-1 Residential.

Applicant's existing quarry is virtually surrounded by residential and commercial uses. There are no unique physical characteristics on the Hempt Tract that would prevent Applicant from using it for a permitted use.

The Township presented the testimony of its engineer, Stephen Fleming, P.E. Fleming is also a licensed real estate agent. Fleming noted that the Hempt Tract is generally flat and slightly sloping, bounded to the east and the south by the existing quarry and by an R-1 Residential district to the north and west. Fleming also explained the Hempt Tract is bounded by two Township roads, Sample Bridge Road to the west and Millfording Road, which accesses an existing single-family residential development to the north. The Hempt Tract is served by public water and public sewer. It does not appear the Hempt Tract is impacted by floodplains, wetlands or other limiting features.

3

Fleming prepared two sketch plans for possible residential development of the Hempt Tract using the cluster provision of the R-1 district. The first sketch plan contains 56 lots with a minimum lot size of approximately 6,000 square feet, plus the required open space and two access points from Millfording Road. The first sketch plan generally complies with the Township's zoning and subdivision and land development ordinances. The second sketch plan contains 57 lots with a minimum lot size of approximately 6,000 square feet, plus the required open space, and access from both Millfording Road and Sample Bridge Road. The second sketch plan also generally complies with the Township's zoning and subdivision and land development ordinances. The overall cost for development consistent with the second sketch plan is approximately $630,000, which is generally consistent with a development of this size.

Fleming further testified the Hempt Tract has no extraordinary features that would cause the development costs to significantly exceed that of another property. Fleming also opined the Hempt Tract could be used for a use permitted in the R-1 district without prohibitive expense. He based his opinion on development and infrastructure costs of approximately $10,000 per lot which is in line with other residential developments in the Township that are currently built and sold.[3]

---

[3] The Hempt Tract is subject to a landscape easement along the frontage of Sample Bridge Road and Millfording Road, approximately 100 feet in width. The landscape easement was created by agreement between the developers of Millfording Highlands and Applicant. Applicant agreed to the imposition of the landscape easement on the Hempt Tract. The landscape easement agreement states in paragraph 1 that: "[Applicant] hereby grants and conveys unto Developers a perpetual, non-exclusive easement (hereinafter called the "Landscape Easement") …" ZHB Op., 5/12/14, Finding of Fact (F.F.) No. 47. Paragraph 6 of the agreement states:

**(Footnote continued on next page…)**

The Township also presented the testimony of Larry Foote, a certified general appraiser and licensed real estate broker. Foote testified regarding the purchase price Applicant paid for the Hempt Tract and a reasonable sale price for any lots created by a subdivision of the Hempt Tract. In preparation for his testimony, Foote reviewed the date of the sale, the size of the property, the sale price, the sale price per acre and the sales of other large tracts of residentially zoned land that occurred over approximately a four-year time frame.

Foote explained that Applicant purchased the Hempt Tract for $1,950,000 in March 2007. The Hempt Tract is 18.55 acres. The "per acre" price for the Hempt Tract is $105,121. ZHB Op., 5/12/14, Finding of Fact (F.F.) No. 55. Foote reviewed comparable sales prices for six large tracts of residentially zoned land sold between 2004 and 2010. The "per acre" sales prices for these comparable large residentially zoned tracts were: $28,743 per acre, $13,622 per acre, $43,678 per acre, $34,841 per acre, $27,961 per acre, and $34,167 per acre. The comparable sales prices ranged from a low of $13,622 per acre to a high of $43,678 per acre. Foote did not find any raw residential land sales that approached

---

**(continued…)**

> 6. Restrictions. [Applicant] agrees that it shall not do any of the following within the Landscape Easement: place any signs relating to its quarry operation; perform any activities incidental to its quarry operations; change the finished grading; disturb any of the Vegetation except as otherwise permitted in this Agreement; or take any action inconsistent with the purposes of the establishment of said Landscape Easement, that being to maintain the appearance of a residential development.

F.F. No. 48.

5

the price that Applicant paid for the Hempt Tract. Foote opined that, based on the comparable sales data, Applicant paid an excessive price for the Hempt Tract.

In preparation for his testimony, Foote also examined the sales prices and lot sizes for sales of vacant, single-family building lots along Millfording Road, which are across the street from the Hempt Tract and the existing quarry. The sale prices of the five comparable, vacant single-family building lots were: 1 Millfording Road, $172,500; 3 Millfording Road, $136,750; 5 Millfording Road, $136,750; 7 Millfording Road, $136,750; and, 129 Balfour Drive, $100,000. Based on the comparable sales, Foote opined the lots depicted on the sketch plans could reasonably sell in the range of $80,000 to $90,000 per lot.

Before the ZHB, Applicant asserted, among other things: (1) the zoning ordinance was invalid because the Hempt Tract was unlawfully reverse spot zoned; and, (2) in the alternative, Applicant was entitled to a validity variance. The ZHB rejected both claims.[4]

As to Applicant's reverse spot zoning challenge, the ZHB explained that spot zoning is the unreasonable or arbitrary classification of a small parcel of land, dissected or set apart from surrounding properties, with no reasonable basis for the differential zoning. BPG Real Estate Investors-Straw Party II, L.P. v. Bd. of Supervisors of Newtown Twp., 990 A.2d 140 (Pa. Cmwlth. 2010). The most determinative factor in an analysis of a spot zoning question is whether the parcel

---

[4] Applicant also asserted the Township Zoning Map was invalid because it failed to provide for a "fair share" of quarries. The ZHB rejected this claim. Applicant does not challenge the ZHB's rejection of its "fair share" argument before this Court.

6

in question is being treated unjustifiably different from similar surrounding land, thus creating an "island" having no relevant differences from its neighbors. Id.

Reverse spot zoning occurs when an "island" develops as a result of a municipality's failure to rezone a portion of land to bring it into conformance with similar surrounding parcels that are indistinguishable. Atherton Dev. Co. v Twp. of Ferguson, 29 A.3d 1197 (Pa. Cmwlth. 2011).

The ZHB determined the facts presented here bore a strikingly similarity to the facts presented in Atherton, in which this Court rejected a reverse spot zoning challenge. Specifically, like the property at issue in Atherton, here the Hempt Tract is not completely surrounded by land zoned for less restrictive use; rather, it is adjacent to land zoned and developed for R-1 residential use to the north and west, and quarry use to the south and east. The ZHB explained there was no evidence that the R-1 zoning of the Hempt Tract was unjustified. There are no physical characteristics of the Hempt Tract that distinguish it from either the land zoned R-1 residential or the land zoned for quarry use. There is also no evidence that the Hempt Tract cannot, because of any physical or other characteristics, be developed in accordance with the R-1 district regulations. All of these facts, the ZHB stated, were strikingly similar to the facts in Atherton.

In addition, the ZHB distinguished this case from our Supreme Court's decision in In re Realen Valley Forge Greenes Associates, 838 A.2d 718 (Pa. 2003), which sustained an applicant's reverse spot zoning challenge. Thus, the ZHB rejected Applicant's reverse spot zoning claim.

As to Applicant's claim of entitlement to a validity variance, the ZHB explained a validity variance is based on the theory that an otherwise valid ordinance is confiscatory when applied to a particular parcel in that it deprives the owner of any reasonable use of his property. Laurel Point Assocs. v. Susquehanna Twp. Zoning Hearing Bd., 887 A.2d 796 (Pa. Cmwlth. 2005). In such a case, the issuance of a variance is necessary to permit a reasonable use of the land and, thus, prevent an unconstitutional taking of the property. Id.

To obtain a validity variance, an applicant must establish: (1) the effect of the regulations complained of is unique to its property and not merely a difficulty common to other properties in the neighborhood; and, (2) the regulation is confiscatory in that it deprives the owner of the use of the property. Id. In addition, the applicant must prove it satisfies the variance criteria set forth in Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC).[5]

To establish the confiscatory nature or the zoning regulation, an applicant must prove the land has no value or only distressed value. Laurel Point Assocs. To meet this burden the applicant must show: (1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) that the property can be conformed for a permitted use only at a prohibitive expense; or, (3) that the property has no value for any purpose permitted by the zoning ordinance. Laurel Point Assocs.

---

[5] Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, as amended, 53 P.S. §10910.2.

8

Here, the ZHB determined Applicant did not present credible evidence to prove, by any of the above stated means, that the zoning ordinance is confiscatory as it relates to the Hempt Tract. To the contrary, the evidence established, and the ZHB determined, the zoning ordinance is not confiscatory. Specifically, the ZHB found there are no physical features of the Hempt Tract which prevent Applicant from developing it as a 57-lot, single-family residential development, which is a permitted use.

In addition, the ZHB found it would not be prohibitively expensive to develop the Hempt Tract with such a development as the costs would be typical of a development of its type and size. Lastly, the ZHB found the Hempt Tract has value as zoned in that the lots in such a development could reasonably sell for $80,000 to $90,000 per lot. The ZHB also explained the undisputed evidence revealed the price Applicant paid for the Hempt Tract was more than two to seven times the "per acre" price paid for comparable, large, residentially zoned parcels. ZHB Op. at 16.[6]

---

[6] The ZHB further stated Applicant also claimed the Hempt Tract could not be developed as a single-family residential development because there can be no access from a public street as a result of the landscape easement agreement. The ZHB rejected this argument. Specifically, Applicant itself entered into the landscape easement agreement with the developer of Millfording Highlands. Thus, Applicant agreed to imposition of the landscape easement on the Hempt Tract. The ZHB stated the landscape easement was a non-exclusive easement established to reduce the impact of any quarrying activities on the Hempt Tract from affecting the Millfording Highlands development. Nowhere in the easement agreement does it state that an access road could not be constructed across the landscape easement from the Hempt Tract onto Millfording Drive or Sample Bridge Road. Further, even if the landscape easement did prevent access to the Hempt Tract, it was not a "unique physical feature" that would prevent development of the Hempt Tract in a manner consistent with the zoning ordinance. ZHB Op. at 17.

For all these reasons, the ZHB rejected Applicant's requested relief. Applicant appealed to the trial court.

Before the trial court, Applicant argued the ZHB erred in rejecting its reverse spot zoning and validity variance claims. Without taking additional evidence, the trial court rejected both of these assertions, and affirmed the ZHB.

More specifically, the trial court determined the ZHB's rejection of Applicant's reverse spot zoning claim was proper given that the ZHB's detailed findings revealed the Hempt Tract is not an island nor is it surrounded by properties that changed in character. After a discussion of this Court's decision in Atherton, and the Supreme Court's decision in Realen, the trial court stated that, while the Hempt Tract is contiguously bordered to the east and south by the existing quarry, there are also contiguous residential zones to the north and west. Thus, even though the existing quarry expanded in 2011, the Hempt Tract is not the sole remaining residential property in the immediate area. The trial court also noted the ZHB's finding that the Hempt Tract could be used for residential purposes in accordance with its current zoning classification. As such, unlike the property at issue in Realen, the Hempt Tract is not a true island, nor has it been left behind as the character of the surrounding properties changed.

As to Applicant's claim that the ZHB erred in denying the requested validity variance, the trial court explained that Applicant did not establish the zoning ordinance was confiscatory and did not rebut evidence that the claimed hardship claimed was self-inflicted. The trial court stated that, in its findings, the

10

ZHB established that the Hempt Tract was economically viable as currently zoned, and the trial court saw no basis to substitute its judgment for that of the ZHB.

The trial court further explained that, prior to purchasing the Hempt Tract, Applicant maintained a 200-foot setback area in the existing quarry within which mining was not permitted. Upon acquiring the Hempt Tract, the setback requirement no longer applied because Applicant owned both tracts, and, as a result, Applicant began mining within the former setback area. In order to develop the Hempt Tract for residential use, Applicant claimed, it would have to reestablish the setback, which prevented it from using all of its existing quarry property in the manner in which it wished to use it. However, the trial court explained, Applicant purchased the Hempt Tract when it was zoned R-1 residential, and Applicant created the situation in which it currently found itself by mining in the former setback area. The fact remains, and the ZHB found, that the Hempt Tract can be developed as zoned. The trial court explained that, the fact that the zoning of the Hempt Tract would remain unchanged was a risk Applicant took when it acquired the Hempt Tract and began mining within the setback area. By its own actions, the trial court stated, Applicant prevented a determination that the denial of the requested validity variance resulted in a confiscatory taking.

For these reasons, the trial court denied Applicant's appeal and affirmed the ZHB's decision. This appeal by Applicant followed.

## II. Issues

On appeal,[7] Applicant argues the ZHB erred in concluding the Hempt Tract was not reverse spot zoned and was not subjected to unjustifiably different treatment from similar surrounding land. Alternatively, Applicant asserts the ZHB erred in denying Applicant a validity variance in order to avoid an unconstitutional confiscation of Applicant's property.

## III. Discussion
## A. Reverse Spot Zoning
## 1. Contentions

Applicant first argues the Hempt Tract was subjected to reverse spot zoning and is being treated differently from surrounding land that is indistinguishable from it in character to Applicant's detriment. Applicant contends that most of the land adjoining the Hempt Tract was rezoned into a Q Quarry district so that the Hempt Tract is a peninsula largely surrounded by an existing quarry.

Applicant maintains neither the size of the Hempt Tract (18.5 acres) nor its shape as a peninsula precludes it from being characterized as spot-zoned according to established principles of jurisprudence. Applicant further asserts that use of the Hempt Tract for quarrying will not adversely affect community health, safety, morals, or welfare, nor would it impose any additional burden on municipal infrastructure or services.

---

[7] Because the parties presented no additional evidence after the ZHB's decision, our review is limited to determining whether the ZHB committed an abuse of discretion or an error of law. Penn Street, L.P. v. E. Lampeter Twp. Zoning Hearing Bd., 84 A.3d 1114 (Pa. Cmwlth.), appeal denied, 99 A.3d 78 (Pa. 2014). The ZHB is the fact-finder here. Id.

12

Applicant points out that attached to its brief is an exhibit admitted during the ZHB hearings that shows the location of the Hempt Tract and surrounding properties. On the exhibit, the Hempt Tract is an imperfect, triangular-shaped parcel marked "B." To the east and south is the Q Quarry district, which is now being mined, and is marked "A." To the west, the Hempt Tract is bordered by Sample Bridge and Millfording Roads. On the other side of those roads is R-1 residentially zoned land marked "C."

Applicant argues the Hempt Tract was zoned residential R-11 from 1975 to 1995, and R-1 from 1995 to the present. Reproduced Record (R.R.) at 120a. Prior to 1995, the land now occupied by the existing quarry was zoned Residential R-6 at the southwest and the northwest part was R-11 until 1988. R.R. at 119a-20a. Then, in 1988, the northwest part of the existing quarry was rezoned to Mineral Recovery District. R.R. at 120a. In 1995, the entire 167-acre site of the existing quarry was rezoned as a Q Quarry district. Id.

As a result of the creation of the Q Quarry district, Applicant maintains, the Hempt Tract was reverse spot zoned. Applicant claims the Hempt Tract is a wedge intruding like an arrowhead into the Q Quarry district. Applicant contends that there is no reasonable basis for treating the Hempt Tract differently from the land in the Q Quarry district, which borders it on much of its boundary. The terrain is the same, the soil is the same, the dolomite beneath is the same and the vegetation is the same. As the ZHB stated in Conclusion of Law No. 25, there are no features distinguishing it from the land in the Q Quarry district.

Applicant asserts the ZHB and the trial court erred in concluding the Hempt Tract could not be reverse spot zoned because it was not an "island" and because it is too large. Applicant maintains the foremost treatise on zoning in Pennsylvania, states:

> While most 'spot' zoning cases involve a smaller use 'island' located in any area of inconsistent uses, it is not necessary that the tract be an island or that it be small. The test is whether an area has been treated without justification in a manner inconsistent with the surrounding area. The 'island' is simply the most common form of inconsistency.

Robert S. Ryan, PENNSYLVANIA ZONING LAW AND PRACTICE §3.4.9 (revised July 31, 2005).

Applicant contends the assertion that spot zoning applies only to "islands" is incorrect. In Atherton, the common pleas court observed, "case law does not directly address whether or not reserve spot zoning may be claimed when the tract in question forms a peninsula, rather than an island." Id. at 1209. This Court agreed, adding "there is no obvious policy reason why spot zoning jurisprudence should not fully apply to reverse spot zoning cases." Id. Applicant notes that spot zoning jurisprudence includes cases that apply spot zoning principles to peninsulas. Knight v. Lynn Twp. Zoning Hearing Bd., 568 A.2d 1372 (Pa. Cmwlth. 1990); C.L. Assocs. v. Bd. of Supervisors of Montgomery Twp., 415 A.2d 134 (Pa. Cmwlth. 1980).

Applicant argues the fact that one side of the Hempt Tract borders on a road on the other side of which is a R-1 district does not preclude a finding that

14

spot zoning occurred here. It asserts that Baker v. Chartiers Township Zoning Hearing Board, 677 A.2d 1274 (Pa. Cmwlth. 1996), involved a spot zoning challenge that is analogous to Applicant's challenge here. There, this Court held the property at issue was illegally spot-zoned. In so doing, we stated: "A zone can be a spot zone even if it is a peninsula surrounded on all but one side by inconsistently zoned land, as appears to be the case here." Id.

Here, Applicant contends, the fact that the Hempt Tract is contiguous (although separated by a road) to a R-1 district does not bar a finding of spot zoning. The Hempt Tract is a peninsula jutting into the Quarry district just like the property at issue in Baker. Pursuant to Baker, the fact of contiguity to a consistently zoned district on one side does not bar a finding of spot zoning. Thus, in Penn Street, L.P. v. East Lampeter Township Zoning Hearing Board, 84 A.3d 1114 (Pa. Cmwlth.), appeal denied, 99 A.3d 78 (Pa. 2014), this Court acknowledged a peninsula (a parcel surrounded on three of four sides by properties with less restrictive zoning classifications) could be unlawfully spot zoned.

Applicant contends the ZHB relied on Atherton for the proposition that a finding of spot zoning cannot be made where the property is contiguous to another parcel with the same zoning. It asserts such reliance is erroneous because, even if Atherton can be read to include such a holding, it conflicts with Baker, a binding precedent that Atherton neither overruled nor distinguished.

Applicant further maintains, contrary to the ZHB's assertion that spot zoning is limited to "a small parcel of land," the 18.5 acre Hempt Tract is not too

15

large to be spot zoned. If a parcel is a "single integrated unit," it makes no difference if it is a .25-acre lot or a 50-acre industrial complex–it can be spot zoned. Commercial Props., Inc. v. Peternel, 211 A.2d 514 (Pa. 1965). Thus, the Supreme Court held the 135-acre tract in Realen was reverse spot- zoned. See also Baker (221-acre farm was spot zoned); Pace Res., Inc. v. Shrewsbury Twp. Planning Comm'n, 492 A.2d 818 (Pa. Cmwlth. 1985) (37-acre tract was spot-zoned); Appeal of Benech, 368 A.2d 828 (Pa. Cmwlth. 1977) (80-acre tract was spot zoned).

Applicant asserts the ZHB committed several fundamental errors of law: (1) it ignored uncontradicted evidence that the Hempt Tract's characteristics are indistinguishable from the characteristics of the Q Quarry district, which is contiguous on two of its three sides; (2) it concluded a parcel must be an "island" to be spot-zoned; (3) it concluded the 18.5-acre Hempt Tract was too large to be spot-zoned; and, (4) it ignored that there is no reasonable justification for treating the Hempt Tract differently from the adjacent Q Quarry district because a 300-foot setback requirement imposed by state regulations will apply to the border of the Hempt Tract and the residences across the road, see 25 Pa. Code §§77.126 (A)(4)(ii), 77.504(A)(2), 77.564(G)(4). Because the Hempt Tract was spot zoned, Applicant asserts, it is entitled to the definitive relief it seeks: use of the Hempt Tract for quarrying.

16

The Township[8] responds that reverse spot zoning occurs where an "island" develops as a result of a municipality's failure to rezone a portion of land to bring it into conformance with similar surrounding parcels that are indistinguishable. The Township argues the Hempt Tract is neither completely surrounded nor surrounded on three sides by land zoned for quarry use; rather it is adjacent to land zoned and developed for R-1 use to the north and west, and quarry use to the south and east. The Hempt Tract has no physical characteristics that distinguish it from either the land zoned residential or the land zoned for quarry use. There is also no evidence that the Hempt Tract cannot, because of any physical or other characteristics, be developed in accordance with the R-1 district regulations. The Township relies on Penn Street and Atherton, in which this Court rejected reverse spot zoning challenges in similar factual scenarios.

In its reply brief, Applicant counters that the ZHB and the Township erroneously rely on the fact that the Hempt Tract is not an "island" in defending the tract against reverse spot zoning. Applicant argues that, although courts may consider whether a property is an "island" in reviewing a spot zoning claim, the fact that a property is not an "island" does not bar a finding of spot zoning or reverse spot zoning.

Further, Applicant contends, in refuting a finding of reverse spot zoning, the Township relies on the fact that the Hempt Tract is adjacent to land developed and zoned R-1 Residential. Applicant argues this ignores the reality of

---

[8] The ZHB indicated it would not file a brief, stating its position is identical to that of the Township.

17

the Hempt Tract's location in the Township. While it is true a R-1 district adjoins the Hempt Tract on the other side of a street, the majority of the Hempt Tract is a "wedge" (*i.e.*, a peninsula) that extends into the existing Quarry district. The Hempt Tract is akin to a piece of pie that was engulfed by the quarry. As a result, Applicant argues, while the Township slowly rezoned the existing quarry from residential to the now Q Quarry district use over a period from 1988-1995, the Hempt Tract, which extends into the existing quarry, remains zoned for residential use. R.R. at 119a-120a. Such action results in the reverse spot zoning of the Hempt Tract as it is now treated differently than the contiguous quarry without justification.

### 2. Analysis

At the outset, we note, this Court may not substitute its interpretation of the evidence for that of the ZHB. Taliaferro v. Darby Twp. Zoning Hearing Bd., 873 A.2d 807 (Pa. Cmwlth. 2005). It is the ZHB's function to weigh the evidence before it. Id. The ZHB is the sole judge of the credibility of witnesses and the weight afforded their testimony. Id. Assuming the record contains substantial evidence, we are bound by the ZHB's findings that result from resolutions of credibility and conflicting testimony. Id.

As to the standards employed in analyzing a substantive validity challenge, in Realen, our Supreme Court explained:

> [A] zoning ordinance must be presumed constitutionally valid unless a challenging party shows that it is unreasonable, arbitrary, or not substantially related to the police power interest that the ordinance purports to serve[;] nevertheless, [a]mong other reasons, an ordinance will be found to be unreasonable and not

18

substantially related to a police power purpose if it is shown to be unduly restrictive or exclusionary.... Similarly, an ordinance will be deemed to be arbitrary where it is shown that it results in disparate treatment of similar landowners without a reasonable basis for such disparate treatment.... Moreover, in reviewing an ordinance to determine its validity, courts must generally employ a substantive due process inquiry, involving a balancing of landowners' rights against the public interest sought to be protected by an exercise of the police power.

Moreover, [t]he substantive due process inquiry, involving a balancing of landowners' rights against the public interest sought to be protected by an exercise of the police power, must accord substantial deference to the preservation of rights of property owners, within constraints of the ancient maxim of our common law, *sic utere tuo ut alienum non laedas.* 9 Coke 59-So use your own property as not to injure your neighbors. A property owner is obliged to utilize his property in a manner that will not harm others in the use of their property, and zoning ordinances may validly protect the interests of neighboring property owners from harm.

Hence, the function of judicial review, when the validity of a zoning ordinance is challenged, is to engage in a meaningful inquiry into the reasonableness of the restriction on land use in light of the deprivation of landowner's freedom thereby incurred.

Id. at 728-29 (citations omitted).

Spot zoning is the "unreasonable or arbitrary classification of a small parcel of land, dissected or set apart from surrounding properties, with no reasonable basis for the differential zoning." Penn Street, 84 A.3d at 1121 (quoting Atherton, 29 A.3d at 1204); BPG Real Estate Investors, 990 A.2d at 150; Christman v. Zoning Hearing Bd. of Twp. of Windsor, 854 A.2d 629, 634-35 (Pa.

19

Cmwlth. 2004). "When faced with a spot zoning challenge, a reviewing court must presume the zoning ordinance is valid and constitutional; the burden of proving otherwise is on the challenging party, who must show that the provisions are arbitrary and unreasonable, and have no relation to the public health, safety, morals, and general welfare." Id. (quoting Atherton, 29 A.3d at 1204); Christman, 854 A.2d at 635.

"Spot zoning must be clearly established; if the validity of the rezoning ordinance is debatable, it must be permitted to stand." Id. The most determinative factor in an analysis of a spot zoning question is whether the parcel at issue is being treated unjustifiably different from similar surrounding land, thus creating an "island" having no relevant differences from its neighbors. Id.

"There is no precise formula for determining whether a classification of property constitutes spot zoning and cases should be decided on the facts guided by case law." Id. (quoting Sharp v. Zoning Hearing Bd. of Twp. of Radnor, 628 A.2d 1223, 1228 (Pa. Cmwlth. 1975)).

Reverse spot zoning, the theory advanced by Applicant, occurs where an "island" develops as a result of a municipality's failure to rezone a portion of land to bring it into conformance with similar surrounding parcels that are indistinguishable. Realen; Penn Street; Atherton; Briar Meadows Dev., Inc. v. S. Centre Twp. Bd. of Supervisors, 2 A.3d 1303 (Pa. Cmwlth. 2010); LHT Assocs. v. Twp. of Hampton, 809 A.2d 1072, 1075 (Pa. Cmwlth. 2002); Guentter v. Montgomery Cnty., Borough of Lansdale, 345 A.2d 306 (Pa. Cmwlth. 1975).

Here, in rejecting Applicant's reverse spot zoning claim, the ZHB made the following pertinent findings (with emphasis added):

2. [Applicant] is the owner of an approximately 18.5 acre vacant tract of land located at the intersection of Millfording Road and Sample Bridge Road … (N.T. pp. 46, 299, Township Exhibits 20 and 21)

3. The [Hempt Tract] is zoned R-1, Residential Zone. (N.T. p[.] 302; Township Exhibits 19A and 19B).

4. The [Hempt Tract] was also zoned R-1 Residential Zone when [Applicant] purchased it. (N.T. p. 46).

5. [Applicant] is the owner and operator of an existing quarry that abuts the eastern and southern sides of the [Hempt Tract] …. N.T. pp. 46, 302, Township Exhibits 20 and 21.

* * * *

10. The [e]xisting [q]uarry is zoned Q, Quarry Zone. (N.T. p. 28; Township Exhibits 19A and 19B).

11. The [Hempt Tract] is butted to the west and north by land zoned R-1 Residential Zone, including the Millfording Highlands development. (N.T. pp. 302-303; Township Exhibits 20 and 21).

12. Prior to its purchase by [Applicant], the [Hempt Tract] was part of the Millfording Highlands development. (N.T. p. 305).

13. Other than its geological suitability for quarrying, the [Hempt Tract] does not have any extraordinary physical features, it is relatively flat in nature and it is adjacent to the Millfording Highlands development. (N.T. pp. 229, 303, 341). The geological suitability of the [Hempt Tract] for quarrying does not impact upon its suitability for development consistent with the permitted uses in the district.

21

14. The [Hempt Tract] is similar to the properties to the north of the tract. (N.T. p. 303).

15. The [Hempt Tract] is not surrounded by land that is zoned other than or less restrictively than R-1 Residential Zone. (N.T. [pp.] 302-303; Township Exhibits 20 and 21).

16. [Applicant's] [e]xisting [q]uarry is virtually surrounded by residential and commercial uses. (N.T. p. 306; Township Exhibits 20 and 21).

17. There are no unique physical characteristics on the [Hempt Tract] which would prevent it from being used for something for which it is zoned. (N.T. pp. 48, 340-346; Township Exhibits 25 and 26).

ZHB Op., 5/12/14, Findings of Fact (F.F.) Nos. 2-5, 10-17. Additionally, the ZHB made the following pertinent conclusions of law (with emphasis added):

23. The [Hempt Tract] is not completely surrounded by land zoned Quarry, rather it is adjacent to land zoned and developed as R-1 Residential to the north and [west] and Quarry to the south and east.

24. There is no evidence that the R-1 zoning the [Hempt Tract] is unjustified.

25. There are no physical characteristics of the [Hempt Tract] which distinguish it from either the land zoned R-1 Residential or the land zoned Quarry.

26. There is no evidence that the [Hempt Tract] cannot, because of any physical or other characteristics[,] be developed in accordance with the R-1 Residential District.

27. Because the facts of *Realen* are vastly different from those of the present case, the *Realen* decision is not controlling.

22

28. [Applicant] has not met its burden of proof to show that a reverse spot zone has been created with regard to the [Hempt Tract].

ZHB Op., Concls. of Law Nos. 23-28. Upon review, we discern no error in the ZHB's rejection of Applicant's reverse spot zoning claim.

Specifically, the irregularly-shaped Hempt Tract is neither an "island," nor as Applicant contends, a "peninsula," which is completely surrounded, or surrounded on all but one side by properties with less restrictive zoning classifications. Indeed, our review of the record confirms the ZHB's determinations that, although the property to the south and east of the Hempt Tract is zoned for Quarry use, the properties to the north and west are zoned R-1 Residential, like the Hempt Tract. See F.F. Nos. 5, 11, 33; R.R. at 325a, 399a. Indeed, Millfording Highlands, a large residential development, is located to the north of the Hempt Tract, and the Hempt Tract is bounded by Millfording Road, which accesses the Millfording Highlands residential development. F.F. No. 34; R.R. at 325a.

In addition, the R-1 Residential zoning classification of the Hempt Tract, as compared to the Q Quarry zoning classification of the property to the south and east, is justified. To that end, the ZHB, as fact-finder, found that prior to Applicant's purchase the Hempt Tract was part of the Millfording Highlands residential development. F.F. No. 12; R.R. at 289a. Further, other than its geological suitability for quarrying, the Hempt Tract has no extraordinary physical features, it is relatively flat, and it is adjacent to the Millfording Highlands development. F.F. No. 13; R.R. at 287a, 325a. The ZHB found the Hempt Tract is

23

similar to the residentially zoned properties to its north, F.F. No. 14; R.R. at 287a, and it contains no unique physical features that would prevent Applicant from using it for a permitted use in the R-1 district. F.F. No. 17; R.R. at 102a, 323a-330a, 409a-410a. Thus the ZHB expressly determined there was no evidence that the Hempt Tract's R-1 zoning classification was unjustified. Concl. of Law No. 24.

Nevertheless, Applicant points to the fact that the existing quarry, which lies to the south and east of the Hempt Tract, was zoned for residential use until 1995, when it was rezoned for quarry use, while the Hempt Tract retained its residential zoning classification. However, Applicant makes no assertion that the properties to the north and west of the Hempt Tract, which are currently zoned for residential use, were rezoned from more restrictive zoning classifications over time. Thus, Applicant offers an incomplete picture of the rezoning of the surrounding properties, which is insufficient to bolster its reverse spot zoning claim.

Further, contrary to Applicant's assertions, the ZHB did not reject Applicant's reverse spot zoning claim simply because the Hempt Tract is not an "island" of residentially zoned land or because it is too large. Rather, the ZHB employed the correct analysis in evaluating Applicant's reverse spot zoning claim. As stated above, the most determinative factor in an analysis of a spot zoning question is whether the parcel at issue is being treated unjustifiably different from similar surrounding land, thus creating an "island" having no relevant differences

24

from its neighbors. Here, the ZHB determined the Hempt Tract is not an "island" that is being treated unjustifiably different from surrounding properties.

Moreover, while Applicant repeatedly refers to the Hempt Tract as a peninsula, which is surrounded on two of its three sides by less restrictively zoned properties, our review of the zoning map belies this assertion. See R.R. at 399a (a color version of which is appended to the Township's brief). Additionally, even if Applicant were correct in its characterization of the Hempt Tract as a "peninsula," in our 2014 decision in Penn Street, we recognized that, "up to this point there has been no successful claim of reverse spot zoning in a 'peninsula' [(as opposed to an 'island')] fact situation." Id. at 1126 (quoting Atherton, 29 A.3d at 1209).

Moreover, in Penn Street and Atherton, we rejected claims of spot zoning in cases that presented fairly similar factual scenarios to the facts presented here. First, in Atherton, the applicant filed a validity challenge to the township zoning map questioning the high density residential zoning classification of its property. It sought to have the property rezoned for commercial use. The local governing body rejected the applicant's claim that its property was reverse spot zoned. The common pleas court affirmed.

In upholding the rejection of the applicant's reverse spot zoning challenge, this Court explained that the property at issue was not entirely surrounded by commercially zoned properties; rather, it was bounded on one side by residential use and partially, on another side, by residential use. More importantly, there was no indication that the property's residential zoning

25

classification was unjustified. To the contrary, the fact-finder reasonably explained why the property was treated differently than some of the surrounding areas. The fact-finder also determined the property was more compatible with the adjoining residential land than the adjoining commercial land, and it offered record-based reasons for its determination. Additionally, while the applicant's witnesses expressed their preference to develop the property for commercial use, the applicant conceded the subject property was indistinguishable in character from the adjoining residential use.

Thereafter, in <u>Penn Street</u>, the applicant filed a substantive validity challenge to a township zoning ordinance, claiming, among other things, the rural zoning classification of its property constituted reverse spot zoning. There, commercial properties bordered the applicant's property to the north and east, while the properties to the south and west were zoned rural like the applicant's property. The zoning board rejected the applicant's reverse spot zoning claim, and the common pleas court affirmed.

On further appeal, this Court affirmed, explaining the property was neither an island nor a peninsula of land surrounded by properties with less restrictive zoning classifications. Further, the rural zoning of the property was not unjustified because the commercially zoned properties had frontage on the area's primary commercial artery, while the applicant's property did not. This Court also pointed to the zoning board's finding that the applicant's property had no physical features that differed substantially from the rural zoned properties to the south and west.

26

Further, in both Atherton and Penn Street, we explained that where "an honest difference of opinion" exists as to how a property should be zoned, and "sound policy" could support a decision that a property was properly zoned for either of two competing zoning classifications, we could not disturb a local governing body's legislative decision. Penn Street, 84 A.3d at 1126 (quoting Atherton, 29 A.3d at 1207). Thus, "[i]t is well established that, if the validity of the legislation is fairly debatable, the legislative judgment must be allowed to control." Id.

Moreover, in both Atherton and Penn Street, we distinguished Realen, discussed by Applicant here. We explained that Realen involved "the validity of the agricultural zoning of a tract located in the heart of one of the most highly developed areas in the region, entirely surrounded by an urban landscape, and immediately adjacent to what is currently the world's largest shopping complex at one discrete location: the Court and the Plaza at King of Prussia." Realen, 838 A.2d at 720. The 135-acre property at issue in Realen, which was zoned agricultural, was used as a golf course and was located at the confluence of the region's primary arterial highways and immediately adjacent to one of the most intensely developed commercial areas in the region. Although surrounding tracts were originally zoned for agricultural use, between 1955 and 1985, the vast majority of the properties in the agricultural district were rezoned to permit intense commercial development, with the exception of the golf course tract. The equitable owner of the golf course tract, who sought to develop it for a large multi-use development, challenged the validity of the tract's agricultural zoning. The zoning board, court of common pleas and this Court rejected the challenge.

27

On further appeal, however, a majority of the Supreme Court sustained the developer's reverse spot zoning challenge. In so doing, the Court employed a substantive due process analysis, balancing the landowner's rights against the public interest sought to be protected by an exercise of the police power. The Court explained that in reviewing a spot zoning challenge, the critical inquiry is whether the rezoned land was treated unjustifiably different from similar surrounding land. It stated, "[t]he question is whether the lands at issue are a single, integrated unit and whether any difference in their zoning from that of adjoining properties can be justified with reference to the characteristics of the tract and its environs." Id. at 730. The Court concluded no difference in the zoning could be justified. Specifically, the Court, speaking through former Justice Lamb, stated:

> We hold that th[e] agricultural zoning [of the property at issue], designed to prevent development of the [property at issue] and to 'freeze' its substantially undeveloped state for over four decades in order to serve the public interest as 'green space', constitutes unlawful 'reverse spot zoning' beyond the municipality's proper powers. …
>
> Of the land characteristics offered by the zoning board in support of its rejection of the spot zoning challenge, only the size of the tract and its location entirely bounded by arterial highways, are the subject of any discussion. There can be no question, as the zoning board found, that arterial roadways are, in many instances, an appropriate feature to be designated as the boundary between incompatible zoning districts. But the issue here is not whether *any* zoning district designation could be appropriately applied to the [g]olf [c]lub's lands but whether the [agricultural zoning] [d]istrict designation can be so justified. It turns reason and land planning precepts on their head to assert, as the zoning board's decision implies, that this tract's *restricted,*

28

*agricultural zoning* is justified by its ready access to the region's primary arterial roads on every hand. Apart from a bare assertion that it is so, neither the zoning board nor the courts below have offered either reason or authority to support the proposition, essential to the propriety of the decision here reviewed, that the location of [the] highways [that entirely bound the golf course property] makes agricultural zoning appropriate for this tract while the properties on the opposite side of the same roadways are appropriately zoned and developed for intense, commercial use. Any relationship between agricultural zoning and the other tract characteristics identified in the decisions below, including the property's topography and shape, is similarly unexplored in the evidence of record, the findings of the [b]oard, or the arguments of appellees. …

On this record, no characteristic of the [g]olf [c]lub's property justifies the degree of its developmental restriction by zoning as compared to the district designation and use of all of the surrounding lands both within the [t]ownship and in the adjoining municipality. This is spot zoning.

We recognize that the circumstances here presented differ factually from the spot zoning cases we have previously decided in the chronology of the municipal action creating the unjustified 'island' of disparate zoning. In previous cases, the island was created by a single municipal act directed toward the property which became the disputed island; either to that property owner's benefit or detriment. Here, in contrast, the [g]olf [c]lub's status as an island of agricultural zoning was the product of a series of rezonings of surrounding properties beginning in the 1950's and ending in about 1985.

[The developer] contends that the origin of a tract's unjustified zoning treatment as compared to adjoining properties is not decisive and we agree. It is the difference in treatment that must be justified, not its origin or chronology. Some courts have used the term 'reverse spot zoning' to describe the circumstances where

the unjustified difference in treatment arises from the rezoning of lands surrounding the tract at issue and this term appropriately underscores the distinction between cases like that here presented where an island is created by the rezoning of other land from the more common situation where the challenged legislation is that creating the island tract.

Id. at 721, 730-31 (emphasis in original). As a result, the Supreme Court sustained the developer's validity challenge.[9]

For the reasons set forth above, the case presently before this Court is distinguishable from Realen. Specifically, the Hempt Tract is not completely surrounded or surrounded on three sides by properties with less restrictive zoning classifications. In fact, the properties to the north and west of the Hempt Tract are zoned R-1 Residential, like the Hempt Tract. More importantly, the ZHB determined there was no evidence that the R-1 residential zoning of the Hempt Tract was unjustified. ZHB Op., Concl. of Law No. 24. The ZHB further determined that the Hempt Tract is similar to the residentially zoned properties to its north; in fact, it was previously part of the existing Millfording Highlights residential development. F.F. Nos. 12, 14. Additionally, the Hempt Tract has no unique physical characteristics that would prevent Applicant from using it for a permitted use in the R-1 district. F.F. No. 17; Concl. of Law No. 26. Thus, the present case is more akin to Penn Street and Atherton than Realen.

---

[9] In a thoughtful dissenting opinion, Justice (now Chief Justice) Saylor opined that the zoning board's supported findings warranted rejection of the reverse spot zoning challenge.

30

We also reject Applicant's reliance on Baker. There, the local governing body amended the zoning ordinance resulting in the rezoning of a 221-acre farm from agricultural to industrial. The rezoned land was adjacent to an existing landfill, and the rezoning occurred at the request of the landfill's owner. An objector challenged the validity of the rezoning, and the zoning board rejected the challenge. On appeal, however, the common pleas court reversed. It determined the zoning board erred in concluding the parcel was not spot zoned, based on several factors, including: (1) the local governing body's failure to provide a full and fair examination of the impact the rezoning would have on adjacent properties; (2) the special relationship between the landfill owner and the local governing body that led to an expedited deliberation process to the detriment of the public interest; and, (3) the township's knowing failure to comply with the statutory mandate to submit the comprehensive plan to the planning commission for comparison with the rezoning request.

On further appeal to this Court, the landfill operator asserted the objector did not meet her burden of proving the rezoning constituted an illegal spot zone. We disagreed. Preliminarily, we rejected the argument that the parcel's large size, by itself, precluded a determination that it was spot zoned. We also determined that the fact that the parcel was not an "island" entirely surrounded by inconsistently zoned properties was not dispositive as a "peninsula" surrounded on all but one side by inconsistently zoned land could be considered spot zoned.

Of greater significance to our determination, we explained that one factor that was indicative of spot zoning was that the township did not comply with

31

the MPC's mandate regarding submission of a comprehensive plan to the planning commission for comparison with a rezoning request. Failure to submit the comprehensive plan to the planning commission to determine whether or not the rezoning complied with the comprehensive plan indicated the deliberation process was expedited to the detriment of the public interest. Although the common pleas court refrained from labeling the rezoning "contract zoning," we stated the procedural irregularities revealed the zoning board did not make a full and fair examination of the impact of the rezoning in its attempt to accommodate the landfill operator. Thus, we held the zoning board erred in determining the rezoning of the farm did not constitute spot zoning.

Here, Applicant argues, to the extent the ZHB relied on Atherton for the proposition that when a parcel is bounded on one side by land subject to the same zoning classification, a spot zoning claim must fail, such an interpretation conflicts with Baker, which held that a parcel that is a "peninsula" (surrounded on all but one side by inconsistently zoned land), can be considered spot zoned. This argument lacks merit for two reasons.

First, in Atherton, we acknowledged the common pleas court's observation that, while our case law reveals that a peninsula may constitute spot zoning in the appropriate case, see Knight; C.L. Assocs., the law was silent as to whether a peninsula could form the basis for a reverse spot zoning claim. We agreed with this observation, adding: "While there is no obvious policy reason why spot zoning jurisprudence should not fully apply to reverse spot zoning cases, we acknowledge that up to this point there has been no successful claim of reverse

spot zoning in a 'peninsula' fact situation." <u>Atherton</u>, 29 A.3d at 1209. Thus, there is no conflict between <u>Atherton</u> and <u>Baker</u>, and a careful review of the ZHB's decision reveals it did not interpret <u>Atherton</u> in a manner that conflicts with <u>Baker</u>. More importantly, as discussed above, the Hempt Tract is *not* a peninsula that adjoins similarly zoned land on only one side; rather, the ZHB's supported findings reveal the properties to both the north and west of the Hempt Tract are zoned R-1 Residential.

## B. Validity Variance
### 1. Contentions

Alternatively, Applicant contends it also sought a validity variance in order to avoid an unconstitutional confiscation of its land. It asserts a municipality may utilize zoning only if it is substantially related to protection of public health, safety, or welfare; neither zeal nor worthwhile objectives justify impinging on the rights of private property owners. Applicant argues a validity variance is a method of avoiding a needless confiscation of property. It further maintains the zoning ordinance here violates these constitutional precepts as applied to Applicant's parcels, the Hempt Tract and the adjoining quarry. Applicant contends the ZHB erred in denying Applicant's validity variance request.

To that end, Applicant maintains the zoning ordinance confiscates its land by needlessly placing next to a Q Quarry district, a R-1 district, which deprives Applicant of the ability to use a significant part of the existing quarry for its permitted use. Specifically, Applicant argues, if the requested variance is denied, Applicant will be either unable to use 300-feet of the existing quarry (the required setback for a quarry from a residential development), or it will be unable

33

to use the Hempt Tract for many years while it mines the quarry. If a variance allowing quarrying on the Hempt Tract is granted, all of the existing quarry can be mined, a substantial part of the Hempt Tract can be mined, and the 300-foot setback can be provided. Applicant asserts that, if the variance is granted, the public health, safety and general welfare will be protected, and it will be allowed the economically viable use of both the Hempt Tract and the existing quarry. An unnecessary confiscation of private property can be avoided through the grant of the validity variance.

Applicant asserts that a validity variance may be granted where an applicant establishes: (1) the effect of the regulations complained of is unique to the applicant's property and not merely a difficulty common to other lands in the neighborhood; and (2) the regulation is confiscatory in that it deprives the owner of the use of the property. Hersh v. Zoning Hearing Bd. of Marlborough Twp., 493 A. 2d 807 (Pa. Cmwlth. 1985); E. Torresdale Civic Ass'n v. Zoning Bd. of Adjustment, 481 A. 2d 976 (Pa. Cmwlth. 1984), aff'd, 499 A.2d 1064 (Pa. 1985). Applicant contends it satisfied these two criteria.

In particular, Applicant first argues the zoning ordinance denies it the economically viable use of its land and, therefore, works a confiscation. While the Hempt Tract can be used for residential purposes, the R-1 zoning of the Hempt Tract needlessly prevents Applicant's permitted use of a substantial part of its adjoining property in the Q Quarry district. By legislating that the permitted use of the Hempt Tract is residential, Applicant argues, the Township needlessly placed an inconsistent use next to a Q Quarry district, which, as a matter of law, prevents

34

Applicant from the permitted use of a substantial part of its land in the Quarry district. Applicant points out that state regulations require a 300-foot setback from the nearest occupied dwelling, school, park, or institutional building not owned by the quarry operator. 25 Pa. Code §§77.126(A)(4)(ii), 77.504(A)(2), 77.564(G)(4).

Applicant maintains there is no economically viable use of its land in the Q Quarry district for anything other than extraction of dolomite. The Township legislated that the Hempt Tract is to be used for residences. Under the Township's zoning scheme, if the Hempt Tract is put to its only viable permitted use (residential), a substantial part of Applicant's existing quarry cannot be used for its permitted use (extraction of dolomite). Alternatively, if Applicant uses the existing quarry for its permitted use, it cannot use the Hempt Tract for residences. Applicant contends it owns both tracts, and it has a right as the owner to make economically viable use of each. To deprive it of the ability to use a significant portion of one of its tracts because of the permitted use of an adjoining tract that it owns is a confiscation. The zoning scheme currently in place needlessly forces Applicant to choose which of its properties it will use.

Applicant acknowledges that a party seeking a validity variance must comply with the traditional variance requirements of Section 910.2(a) of the MPC. Laurel Point Assocs. However, it asserts, not all of these requirements must be met, only those that are "relevant." Id. at 801, n.9. Importantly "unnecessary hardship" is established by proof of needless confiscation. Id. at 801. Here, Applicant contends, it did not create the hardship; rather, the zoning ordinance creates the confiscation.

35

The Township counters that a validity variance is based on the theory that an otherwise valid ordinance is confiscatory when applied to a particular parcel, in that it deprives the owner of any reasonable use of his property. Laurel Point Assocs. To establish the confiscatory nature of the zoning regulation, an applicant must prove the land has no value or only distressed value. To meet this burden the applicant must show: (1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) that the property can be conformed for a permitted use only at a prohibitive expense; or, (3) that the property has no value for any purpose permitted by the zoning ordinance. Id.

The Township argues, in order to obtain a validity variance, the applicant must establish: (1) the effect of the regulations complained of is unique to the applicant's property and not merely a difficulty common to other lands in the neighborhood; and, (2) the regulation is confiscatory in that it deprives the owner of the use of the property. Id. Additionally, the applicant must also comply with the variance criteria in Section 910.2 of the MPC.

The Township maintains Applicant did not present credible evidence to prove, by any of the above means, that the zoning ordinance is confiscatory as to the Hempt Tract. In contrast, the Township proved the zoning ordinance is not confiscatory. The Township showed there are no physical features of the Hempt Tract that would prevent it from being used as a 57-lot, single-family residential development, which is a permitted use. R.R. at 323a-29a, 409a, 410a.

36

In addition, the Township argues it showed it would not be prohibitively expensive to develop the Hempt Tract as a residential development, the costs of which would be typical of a development of its type and size. R.R. at 330a. The Township asserts it showed that the Hempt Tract has value as zoned in that the lots in such a development could reasonably sell for $80,000 to $90,000 per lot. R.R. at 342a, 343a, 413a-18a. The Township also contends that it showed the price Applicant paid for the Hempt Tract was more than two to over seven times the "per acre" price paid for comparable, large, residentially zoned parcels. R.R. at 339a-343a, 419a, 420a.

The Township notes that, in its brief, Applicant does not contest that the Hempt Tract can be developed as a residential development in accordance with its R-1 regulations, but rather it contends doing so would preclude it from continuing to quarry within the required setback. See Section 223.8 of the zoning ordinance (requiring a minimum setback of 200 feet for mining from any property line of properties not owned or controlled by the operator of the principal use).

The Township argues that, prior to Applicant's purchase of the Hempt Tract in 2007, the mining operation of the existing quarry was set back 200 feet from the property line that separates the Hempt Tract from the existing quarry. After the purchase of the Hempt Tract, Applicant, under Section 223.8 of the zoning ordinance, was no longer required to maintain the 200-foot setback because Applicant, the operator of the existing quarry, also owned the Hempt Tract. Applicant was then able to mine within the 200-foot setback up to 25 feet from the property line. R.R. at 97a. In the event the Hempt Tract is sold for residential

37

development, Applicant would be required to reinstate the 200 foot mining setback and stop mining within the setback. Id. The Township points out that Applicant argues that, as a result, the existing quarry property within the 200 foot setback would be "confiscated," and it is entitled to a validity variance. The Township maintains this argument fails for several reasons.

First, Applicant applied for a validity variance for the Hempt tract, not the existing quarry. The fact that the Hempt Tract is zoned R-1 and can be developed in accordance with R-1 regulations does not result in the confiscation of any part of the Hempt Tract. Second, the test for a validity variance requires that Applicant prove the Hempt Tract has no value or only distressed value to establish a confiscation. To meet this burden, Applicant had to show: (1) the physical features of the Hempt Tract are such that it cannot be used for a permitted purpose; or (2) the Hempt Tract can be conformed for a permitted use only at a prohibitive expense; or (3) the Hempt Tract has no value for any purpose permitted by the zoning ordinance. Having a potentially adverse impact on an adjacent property owned by the same entity is not grounds for a validity variance on the Hempt Tract. The Township asserts Applicant did not prove or even offer any evidence to meet the required burden for a validity variance.

Lastly, the Township argues, Applicant mined within the 200-foot setback of the existing quarry since it purchased the Hempt Tract and may continue to do so until it sells the Hempt Tract or depletes the minerals. If it had not purchased the Hempt Tract, it would have never been able to mine within the existing setback. Thus, the Township asserts Applicant used the Hempt Tract to

further its quarry use despite the fact that no quarrying takes place on the Hempt Tract. Applicant chose to mine in the 200-foot setback despite the fact that the Hempt Tract is zoned R-1, and if it were ever developed residentially and the lots sold, Applicant would be required to stop mining in the setback. The Township contends Applicant either knew or should have known at the time it began mining in the setback that at some point it would have to choose between continuing to mine in the setback or developing the Hempt Tract. By mining in the setback, Applicant created its own hardship and an artificial confiscation.

In its reply brief, Applicant maintains it seeks a validity variance on one of its tracts (the Hempt Tract) to avoid needless confiscation of land on another of its tracts (the existing quarry). Because the Township created an inconsistent use zone (residential) adjacent to a quarry zone, a significant part (300 feet) of the quarry is rendered unusable for the otherwise permitted quarrying use. The zoning ordinance allows quarrying as the permitted use in the Quarry district, but because of the residential zoning of the Hempt Tract, Applicant cannot extract dolomite from a large part of its existing quarry unless it does not use the Hempt Tract for decades. This fact is undisputed.

Applicant further notes that, in its brief, the Township contends the Hempt Tract can be used for residences. However, it maintains, this position ignores the fact that doing so needlessly deprives Applicant of its ability to mine a large part of its land in the Q Quarry district as permitted by the zoning ordinance.

Applicant contends the Township also argues Applicant did not request a variance for the existing quarry. Applicant responds that, because quarrying is a permitted use in the zoning district in which the existing quarry lies, no variance is needed for the existing quarry.

Applicant further argues that, although the Township contends Applicant created its own hardship, Applicant did not create the confiscation of its land by needlessly placing inconsistent zones contiguously and by failing to provide relief from the resulting confiscation. Rather, by purchasing the Hempt Tract, Applicant enabled the grant of a validity variance to avoid loss of use of its land without harm to the community.

## 2. Analysis

A validity variance is granted when a zoning regulation is restrictive to the point of confiscation, and the variance is necessary to permit a reasonable use of the land. Hoffman Mining Co., Inc. v. Zoning Hearing Bd. of Adams Twp., 958 A.2d 602 (Pa. Cmwlth. 2008). The applicant can establish the confiscatory nature of the zoning regulation by proving the land has no value or only distressed value because of the regulation. Id.

A validity variance "differs from the 'normal variance' in that the 'normal variance' is granted to adjust the zoning regulation to the particular property; a validity variance holds that the zoning regulation is restrictive to the point of confiscation and requires the issuance of a variance permitting a reasonable use of the land." Hunt v. Zoning Hearing Bd. of Conewago Twp., 61 A.3d 380, 383-84 (Pa. Cmwlth. 2013) (quoting Hersh, 493 A.2d at 811)); see also

40

Nowicki v. Zoning Hearing Board of Monaca, 91 A.3d 287 (Pa. Cmwlth. 2014). When a validity variance is warranted, its issuance prevents an unconstitutional taking. Hunt; Laurel Point Assocs. In other words, a validity variance request is asserted in circumstances that essentially merit a zoning amendment. Id.

An applicant for a validity variance must satisfy numerous criteria. Hunt. Where applicable, an applicant must establish that: "(1) the effect of the regulations complained of is unique to the applicant's property and not merely a difficulty common to other land in the neighborhood; and (2) the regulation is confiscatory in that it deprives the owner of the use of the property." Id. at 384 (quoting Laurel Point Assocs., 887 A.2d at 801)).

An applicant for a validity variance also must comply with the requirements for a variance found in Section 910.2 of the MPC. Id. However, an applicant need not meet each and every element necessary for the grant of a traditional variance in order to establish grounds for a validity variance. Id. To that end, Section 910.2(a) of the MPC requires a ZHB to make findings regarding the variance criteria "where relevant," meaning that "not all criteria must be satisfied in every case and that the quantum of proof necessary to establish a particular criterion may vary depending on the type of variance sought." Id. (quoting Laurel Point Assocs., 887 A.2d at 801 n.9).

Finally, in order to show a property has no value or only a distressed value as a result of the regulation, an applicant for a validity variance must establish: "(1) the physical features of the property are such that it cannot be used

41

for a permitted purpose; or (2) that the property can be conformed for a permitted use only at a prohibitive expense; or (3) that the property has no value for any purpose permitted by the zoning ordinance." Id. at 385 (quoting Laurel Point Assocs., 887 A.2d at 802). In a validity variance case, the key is the actuality of confiscation. Laurel Point Assocs.

Here, after setting forth the applicable principles governing validity variances and a discussion of this Court's decision in Laurel Point Associates, the ZHB explained:

> Applicant failed to provide credible evidence to prove, by any of the aforementioned means, that the [z]oning [o]rdinance is confiscatory with regard in the [Hempt Tract]. In contrast, the evidence established and the [ZHB] finds that the [z]oning [o]rdinance is not confiscatory. The [ZHB] finds that there are no physical features of the [Hempt Tract] that would prevent it from being used as a 57 lot single family residential development, which is a permitted use on the [Hempt Tract]. (N.T. pp. 339-345; Township Exhibits 25 and 26). In addition the [ZHB] finds that it would not be prohibitively expensive to develop the [Hempt Tract] into such a development, the costs of which would be typical of a development of its type and size. (N.T. p.346). Lastly, the [ZHB] finds that the [Hempt Tract] has value as zoned in that the lots in such a development could reasonably sell for $80,000.00 to $90,000.00 per lot. (N.T. pp. 359-360; Township Exhibit 28, pp. 1-6). In addition the uncontradicted evidence finds that the price [Applicant] paid for the [Hempt Tract] was more than two (2) to over seven (7) times the per acre price paid for comparable, large, residentially zoned parcels. (N.T. pp. 355-359; Township Exhibit 28, pp. 7-8). …

ZHB Op. at 16.

42

Upon review, we discern no error in the denial of Applicant's validity variance request in light of the ZHB's supported findings that: (1) the Hempt Tract has no unique physical features that prevent it from being developed for a 57-lot residential development, a permitted use in the R-1 district, R.R. at 323a-330a, 409a-410a; (2) it would not be prohibitively expensive to develop the Hempt Tract for this permitted use, R.R. at 329a-330a; and, (3) when divided into lots for single-family homes in a 57-lot residential development, such lots could reasonably sell for $80,000 to $90,000 per lot, R.R. at 345a. See Laurel Point Assocs. (rejecting developer's validity variance request seeking to use residentially zoned property for commercial office buildings where zoning board's supported findings revealed developer could use property for permitted residential development); Hersh (rejecting applicant's request for a validity variance to use residentially zoned property for mining and quarrying where zoning board found that residential use of property was possible).

Further, that it may be more profitable for Applicant to use the Hempt Tract for quarrying does not entitle Applicant to a validity variance. Laurel Point Assocs. A landowner is not entitled to a validity variance simply because an ordinance deprives it of the most lucrative and profitable uses. Id. Thus, in Hoffman Mining, we explained, in a validity variance case, "an owner who was claiming that the zoning deprived him of the use of the property had to show not only that the coal could not be mined, but that the property could not be reasonably used for any other purpose." Id. at 612 (citing Machipongo Land & Coal Co., Inc. v. Commonwealth, 799 A.2d 751 (Pa. 2002)).

43

In its brief, Applicant does not dispute that it can develop the Hempt Tract for a residential development in accordance with the R-1 district regulations, as found by the ZHB. Instead, it advances the rather convoluted argument that development of the Hempt Tract for residential use will result in an inability to mine a significant portion of its existing quarry on the adjacent tract, as a result of state regulations that require a 300-foot setback from residential dwellings for mining activities.[10] This argument fails.

Applicant sought a validity variance for the Hempt Tract, not the existing quarry. The ZHB's supported findings reveal the Hempt Tract is zoned for residential use and can be developed consistent with the R-1 regulations. These findings make clear that those regulations are not confiscatory when applied to the Hempt Tract. Applicant cites no authority for the proposition that an alleged economic detriment to an adjacent property could justify grant of a validity variance. In any event, the type of economic loss claimed by Applicant with regard to its existing quarry property is not tantamount to confiscation as is required to obtain a validity variance. Laurel Point Assocs.

In addition, the ZHB and the trial court alluded to the fact that any hardship Applicant would suffer as a result of the denial of the requested validity variance was self-inflicted. As to self-inflicted hardship, in Nowicki, this Court recently explained:

---

[10] For mining activities, the zoning ordinance requires a setback of 200 feet from any property line of properties which are not owned, controlled or leased by the operator of the principal use. Section 223.8 of the zoning ordinance.

> In Wilson [v. Plumstead Township Zoning Hearing Board, 936 A.2d 1061 (Pa. 2007)], our Supreme Court addressed the question of whether an applicant has created a self-inflicted hardship, in which case a variance request should be denied. [936 A.2d at 1070]. The Court held that it is not enough that an applicant knew or should have known how the property was zoned to demonstrate that a hardship was self-inflicted; such a holding, the Court concluded, would mean that only the owner of the property at the time the alleged hardship was created could seek a variance and that the variance could be denied simply because of the use an applicant sought. Id.; Manayunk Neighborhood Council v. Zoning Board of Adjustment of City of Philadelphia, 815 A.2d 652, 657 (Pa. Cmwlth. 2002) (pre-purchase knowledge of zoning restrictions, without more, does not create a self-inflicted hardship; where hardship arises from the intensity of the restriction, the right to relief runs with the land). Instead, the Court reiterated that a hardship is self-inflicted where an applicant purchased the subject property for too high a price. [Wilson, 936 A.2d at 1070]; Manayunk Neighborhood Council, 815 A.2d at 657 (to be self-inflicted, a hardship must arise from the purchase itself, as in instances where the price paid was too dear).

Id. at 296 (footnote omitted) (emphasis added).


Here, the record reveals Applicant knew of the Hempt Tract's R-1 zoning when it purchased it, R.R. at 100a, and the uncontradicted evidence showed Applicant paid an excessive price for the Hempt Tract. F.F. No. 60, ZHB Op. at 16; R.R. at 339a-43a. Based on these determinations, the ZHB could properly conclude any hardship was self-inflicted. Nowicki. For these reasons, no error is apparent in the ZHB's denial of the requested validity variance.

45

Based on the foregoing, we affirm.

_____

ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsy Supply, Inc.,         :
           Appellant      :

             :

        v.             :     No. 334 C.D. 2015

             :

The Zoning Hearing Board      :
of Silver Spring Township       :

             :

        v.             :

             :

Township of Silver Spring      :

## **O R D E R**

**AND NOW**, this 15th day of October, 2015, the order of the Court of Common Pleas of Cumberland County is **AFFIRMED**.

_____

ROBERT SIMPSON, Judge